**ENSERCH EXPLORATION, INC., Appellant,**

**v.**

**H.J. GARDNER and wife, Louise Gardner, Appellees.**

**No. 11–91–113–CV.**

Court of Appeals of Texas, Eastland.

July 23, 1992.

Rehearing Denied Aug. 20, 1992.

Susan Laurea, Thomas M. Callan, Dallas, for appellant.

Henry L. McGee, Jr., Tyler, for appellees.

## OPINION

McCLOUD, Chief Justice.

This is a suit for surface damages to land caused by the drilling and completion of an oil and gas well. At the time the well was drilled, H.J. Gardner and Louise Gardner owned only the surface rights in an 89.4–acre tract of land. When they objected to the proposed location of the well, Enserch Exploration, Inc., the oil and gas lessee, secured a temporary restraining order and drilled the well. The Gardners lost title to the land in 1985 when the Tyler Production Credit Association (PCA) foreclosed its mortgage. The Gardners filed suit against Enserch in 1986, alleging that it had "agreed to fairly compensate" them for the damages and loss of use of their property. The jury found that there was an "implied contract" and that the amount of damages to the surface of the property was $18,000. Judgment was rendered on the verdict for the Gardners, and Enserch appeals. We reverse and render.[1]

The jury's verdict, omitting the explanatory instructions and definitions, reads in full as shown:

> [1] Do you find from a preponderance of the evidence that there was an implied contract[2] that Enserch Exploration, Inc. would compensate H.J. Gardner and wife, Louise Gardner, for damages to their land by reason of the use of a portion of the land by Enserch Exploration, Inc.?
>
> ANSWER: We do
>
> [2] From a preponderance of the evidence, what do you find was the damage, if any, to the surface of the property in question by reason of operations of Enserch Exploration, Inc., its agents or employees?
>
> ANSWER: $18,000.00

Appellant has briefed four points of error, arguing that the trial court erred: (1) in denying its motion for instructed verdict; (2) in submitting the two special issues which were submitted to the jury; (3) in denying its motion for judgment non obstante veredicto; and (4) in denying its motion for new trial. In its arguments under the first three points of error, appellant insists that there was no proof of the "existence of a contract," that any such oral contract was barred by the "Statute of Frauds," that the Gardners had no "standing to sue" because of the foreclosure, and that there was a "material variance" between the pleadings and proof. In its argument under the fourth point of error, appellant argues that the jury's answers to the two special issues are "so against the great weight and preponderance of the evidence as to be manifestly unjust."

1. This appeal was transferred from the Tyler Court of Appeals to this court pursuant to TEX. GOV'T CODE ANN. § 73.001 (Vernon 1988).

2. The jury was instructed that:

    [A] *Contract is implied* where, despite the absence of any express declaration of intent by the parties, their acts are such as to indicate, according to common understanding and the ordinary courses of dealing between men, a mutual intent to contract. If the facts are sufficient to support an implied promise, knowledge on the part of the promisor as to what the promisee actually expected is unnecessary and immaterial.

    There was an objection to this instruction in the trial court, but there is no point of error complaining of the instruction.

The landowners' claims are based entirely upon proving the existence of a contractual obligation for payment of damages. They are not seeking a tort recovery for excessive or unreasonable use of the surface.[3]

H.J. Gardner testified that someone (whose name he could not remember) called him on the telephone, said that he worked for Enserch, and offered them $6,000 for surface damages to get their consent to the drilling of the well. Gardner said that, when he rejected the $6,000 offer and objected to the location of appellant's proposed well, Enserch filed suit against them for an injunction. Gardner and his wife did not employ a lawyer, but Gardner appeared in court for the injunction hearing. The trial court permitted Enserch to go onto the Gardners' property. According to Gardner's testimony in this case, the judge "just told them, whatever damage you do, you will pay for." Gardner said that he did not hire an attorney to appeal the injunction because the judge had told the Enserch representative (whose name he could not remember) and Enserch's attorney that Enserch would have to pay for whatever damages they did to his property and that Enserch did not object to that ruling.[4] After the well was drilled, Enserch issued a draft on April 24, 1985, for $5,000 with the notation:

> Settlement of surface damages resulting from drilling and construction operations on the P.V. McFarlin No. 1 Well in Smith County, Texas.

The settlement draft was made payable to the PCA because it had foreclosed its lien on the property. Gardner testified that the PCA bid the property in at the foreclosure for the exact amount of the debt and accrued interest. Gardner claims that Enserch paid the wrong person for these surface damages. We hold that there is no evidence to support the finding of an "implied contract" to pay damages to the owners of the land for whatever damages re-

sulted from the drilling and completion operations on the land involved in this suit; consequently, the trial court erred in overruling the motion for instructed verdict, in submitting the two special issues, and in overruling the motion for judgment non obstante veredicto.

The original offer to pay $6,000 was rejected by appellees, and there is no showing of any subsequent offers by Enserch which could have been accepted by appellees. The testimony about the injunction hearing (where H.J. Gardner states that the district judge told the Enserch representative and attorney that Enserch would have to pay for whatever damages it caused) did not show an offer and acceptance; consequently, that testimony is no evidence of the creation of any contract or agreement, neither express nor implied. Appellees did not seek to recover for violation of the terms of a judgment, and they did not introduce the judgment into evidence. The fact that Enserch voluntarily paid $5,000 to the party which it thought was the owner of the surface does not create any obligation to pay appellees.

The judgment of the trial court is reversed, and this court renders judgment that H.J. Gardner and Louise Gardner take nothing from Enserch Exploration, Inc.

DICKENSON, Justice, dissenting.

I dissent. The judgment of the trial court should be affirmed. The majority opinion outlined the four points of error and the contentions which are made by appellant. Since I disagree with the court's holding on the sufficiency of the evidence to support the jury's finding of an "implied contract" to pay the landowners for surface damages, I will also have to discuss the other contentions made by appellant.

*Existence of Contract*

Appellant did not produce any witnesses to rebut the claims made by H.J. Gardner

---

3. Those claims would have been barred by the two-year statute of limitations. See TEX.CIV. PRAC. & REM.CODE ANN. § 16.003(a) (Vernon 1986).

4. The surface owners had no legal right to deny Enserch, the mineral lessee, access to the land for mineral development purposes. *Ball v. Dillard,* 602 S.W.2d 521 (Tex.1980).

in his testimony. Gardner testified that, when he and his wife objected to the location of appellant's proposed well, Enserch filed suit against them for an injunction. Gardner said that a man from Enserch (whose name he could not remember) called him on the telephone to ask for his permission to drill the well and offered to pay $6,000 to get on the place to drill the well. Gardner said that he told the man that: "I couldn't let him go right out there on that particular spot, that pasture, it would ruin my place." Gardner was planning to sell half-acre mobile home lots, and the location was right in the middle of his frontage on the road. After that telephone conversation, Enserch filed suit in the same court where the present lawsuit was tried. Gardner and his wife did not hire a lawyer, but Gardner did appear in court for the injunction hearing. Enserch was represented by the same lawyer at that hearing (Thomas Callan) as the lawyer who represented it at the trial of this case. When Judge Calhoun permitted Enserch to go onto the Gardners' property, he "just told them, whatever damage you do, you will pay for." Gardner said that he did not hire an attorney to appeal the injunction because the judge had told the Enserch representative (whose name he could not remember) and Attorney Callan that Enserch would have to pay for whatever damages they did to his property, and they did not object to that ruling. In fact, the record shows that Enserch issued a draft on April 24, 1985, for $5,000 with the notation:

> Settlement of surface damages resulting from drilling and construction operations on the P.V. McFarlin No. 1 Well in Smith County, Texas.

The settlement draft was made payable to the PCA because it had foreclosed its lien on the property. Gardner testified that the PCA bid the property in at the foreclosure for the exact amount of the debt and accrued interest. Gardner claims that Enserch paid the wrong person for these surface damages. I would hold that there is some evidence to support the finding of an oral agreement to pay damages to the owners of the land for whatever damages resulted from the drilling and completion operations on the land involved in this suit; consequently, I would hold that the trial court did not err in overruling the motion for instructed verdict, in submitting the two special issues, and in overruling the motion for judgment non obstante veredicto on the basis of appellant's claim that there was no proof of the existence of a contract.

The un-rebutted testimony about the injunction hearing (where Gardner states that the district judge told the Enserch representative and attorney that Enserch would have to pay for whatever damages it caused) is circumstantial evidence of an implied agreement (as defined by the court's charge) which was accepted by Gardner and his wife when they acquiesced in the court's ruling. Their forbearance from insisting that the anticipated location of the well was unreasonable is sufficient consideration,[5] and the agreement is supported by proof that Enserch did in fact pay $5,000 to the party which it thought was entitled to receive payment for the surface damages.

### Statute of Frauds

Appellant argues that the landowners' cause of action for breach of the implied contract to compensate them for damages to their land is barred by the Statute of Frauds, citing *Miami Petroleum Company v. Neal*, 333 S.W.2d 876 (Tex.Civ.App.— El Paso 1960, writ ref'd n.r.e.). That case quotes the rule that, supra at 880:

> The Texas decisions have uniformly recognized that an oral *contemporaneous* condition cannot be proved if it is inconsistent with the terms of a written instrument duly delivered to the party against whom the condition is sought to be invoked. (Emphasis added)

In this case, the oral agreement was neither prior to, nor contemporaneous with, the terms of the oil and gas lease which

---

5. See also TEX.R.CIV.P. 94 which requires a defendant to plead its affirmative defenses, such as failure of consideration.

had been executed by the parties' predecessors in title. The oral agreement does not violate the Texas Statute of Frauds, TEX. BUS. & COM.CODE ANN. § 26.01 (Vernon 1987). Appellant's trial court pleadings refer to Section 26.01(b)(2) which refers to: "[A] promise by one person to answer for the debt, default, or miscarriage of another person." In this case, the promise was made by Enserch's representative and attorney at the injunction hearing when they acquiesced in the trial court's ruling that he would grant their request for injunction with the understanding that Enserch would pay for the damages which it caused to the land. The implied promise was that of Enserch to answer for the debt, default, or miscarriage of Enserch; consequently, I would hold that the trial court did not err in overruling the motion for instructed verdict, in submitting the two special issues, and in overruling the motion for judgment non obstante veredicto on the basis of appellant's claim that the oral contract violated the Statute of Frauds.

## Standing to Sue

Appellant argues that the Gardners did not have standing to sue because of the foreclosure proceedings. Appellant cites *Southwestern Peanut Growers Ass'n v. Womack*, 179 S.W.2d 371 (Tex.Civ.App.—Eastland 1944, no writ), which is a venue case that recognized the rule that a foreclosure "has the effect of extinguishing all right, title or interest, if any, of the defendants in the property." That case does not hold that the foreclosure cuts off a preexisting cause of action for damages to the property. That cause of action is separate and distinct from the title to the property. See *Beneficial Standard Life Insurance Company v. Trinity National Bank*, 763 S.W.2d 52 at 55 (Tex.App.—Dallas 1988, writ den'd), which held that, where the amount of the debt had been bid at the foreclosure sale, "the indebtedness had been cancelled by the bid" and, therefore, the purchaser at the sale was not entitled to the proceeds paid for damages which occurred prior to the foreclosure. Likewise, in this case, the PCA had bid the amount due for principal and interest when it foreclosed upon this property, and the former landowners are entitled to the proceeds of the cause of action which they claimed for damages to the land while they owned the property. Consequently, I would hold that the trial court did not err in overruling the motion for instructed verdict, in submitting the two special issues, and in overruling the motion for judgment non obstante veredicto on the basis of appellant's claim that the Gardners did not have standing to sue because they no longer owned the land.

## Material Variance

Appellant also argues that there was a "material variance" in the Gardners' pleadings and their proof at the time of trial. The Gardners alleged in their petition that Enserch "agreed to fairly compensate" them for the damages and loss of use of their property, which they alleged was at least the sum of $10,000. While Enserch filed an exception to the petition, they failed to secure a ruling. Moreover, there was no objection to the proof at the time of trial on this ground; consequently, the matter was tried by implied consent. I would hold that the trial court did not err in overruling the motion for instructed verdict, in submitting the two special issues, and in overruling the motion for judgment non obstante veredicto on the basis of appellant's claim that there was a material variance between the pleadings and proof at trial.

## Motion for New Trial

Appellant argues that the trial court erred in overruling its motion for new trial because the jury's answers to the two special issues were against the great weight and preponderance of the evidence. In reviewing the jury's answers in compliance with *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951), an appellate court must remember that the jury is free to accept the testimony of any witness. Enserch failed to offer any evidence in rebuttal to that of Gardner and his expert witness on damages. Gardner's testimony is sufficient to support the jury's answer to Spe-

cial Issue No. 1. Both Gardner and his expert witness, Alfred B. Saleh, testified to damages in excess of the sum found by the jury. Gardner testified that he lost the opportunity to subdivide the property and to sell it for mobile home lots. Gardner felt that he had damages in the amount of $29,700. Saleh placed the damages at the sum of $9,000 for the land taken plus $12,000 for damages to the remainder.

### Proposed Decision

I would overrule all four points of error, and I would affirm the judgment of the trial court.