**John HELMER and R. J. Hockert, Appellants,**

v.

**TEXAS FARMERS INSURANCE COMPANY, Appellee.**

**No. 18661.**

Court of Appeals of Texas, Fort Worth.

April 15, 1982.

Andrew L. Vogel, Dee Lee Thomas, Jr., Fort Worth, for appellants.

Larry L. Gollaher, Dallas, for appellee.

Before MASSEY, C. J., and SPURLOCK and JORDAN, JJ.

OPINION

JORDAN, Justice.

This is an appeal from the trial court's withdrawal of a case from the jury and the rendition of judgment in favor of appellee insurance company in a suit filed by appellants on a contract of insurance which in-

sured a house in Dallas sold by appellants to Clydell and Hattie Robertson. The policy was issued to the Robertsons as mortgagors of the house, with appellee named in the loss payable clause as the mortgagee.

We affirm.

Appellants purchased the house in question on May 3, 1976, for $3,650.00 and one week later sold it to Clydell and Hattie Robertson for $6,750.00. Appellants immediately insured the house with appellee for $9,000.00, with appellant Helmer paying the first year premium on the insurance policy. In early January, 1977, the Robertsons were delinquent in their mortgage payments to Helmer and Hockert, and on January 17, 1977, the subject house was severely damaged by fire, which the authorities apparently believed was purposely set by person or persons unknown. On February 7, 1977, three weeks after the fire, appellants posted notice of foreclosure and on March 1, 1977, at the foreclosure sale, bid the property in themselves for the sum of $6,700.00. The indebtedness then due was actually $6,725.70. The insurance company then denied liability to the mortgagees, appellants here, for the reason that under the policy the mortgagee's only interest in the policy was the extent of the indebtedness due them, which the company claimed had been extinguished by the payment of $6,700.00 for the property at the time of the foreclosure.

During trial appellee tendered, and later paid, appellants the sum of $25.70, which was the remaining balance of the balance due on the note and deed of trust taken by appellants when they sold to the Robertsons.

Appellants sued for breach of contract, for the insurance company's failure to pay the claim as due under the contract of insurance, and additionally and alternatively alleged an action against appellee based upon the Texas Deceptive Trade Practices Act, Sec. 5, Subsec. (a), Section 17.50 Texas Business and Commerce Code, as amended, and Article 21.21, Texas Insurance Code as amended. Generally, their alternative pleas asserted that appellee was guilty of misrep-

resentations under both of the above named Acts because one or more of their agents represented to appellants that the bidding by them at the foreclosure sale would make no difference as far as the payment by appellee insurance company of the mortgagee's claim under the subject policy. Appellants claimed that but for such misrepresentations they would not have bid in the property and extinguished their debt, thus negating any liability due them as mortgagees under the policy. Appellants, in their suit, also alleged several grounds of estoppel which would prevent the insurance company from asserting its defense of payment of the mortgage debt.

At trial, when appellants rested their case, the trial court, on motion of appellee, ordered the case withdrawn from the jury and rendered a judgment for appellants for the sum of $25.70, which as stated previously, has been paid. In passing on the propriety of a directed verdict, or, as in this case, a withdrawal of the case from the jury and rendition of judgment, this court is required to review the evidence and the inferences therefrom in the light most favorable to the petitioner, the losing party in the trial court, and to disregard all evidence and inferences adverse to petitioner. *Rogers v. Searle*, 544 S.W.2d 114 (Tex.1976); *Triangle Motors of Dallas v. Richmond*, 152 Tex. 354, 258 S.W.2d 60 (Tex.1953); *Baker v. Story*, 621 S.W.2d 639 (Tex.Civ.App.1981).

By points of error one through four, and seven, appellants complain of the trial court's withdrawing the case from the jury and rendering judgment for the reasons that the evidence supported submission of a fact issue inquiring as to whether misrepresentations by appellee's agents caused appellants to foreclose on the property, that the evidence supported appellants' contention that appellee insurance company engaged in a trade practice that was a misrepresentation of its insurance policy, and that there was sufficient evidence to support appellants' claim that appellee pursued an unconscionable course of action by failing to inform the appellants that foreclosure by them for the full amount of their interest

would negate and extinguish any liability to them on the part of appellee insurance company.

We cannot agree with the contentions raised in these points of error. At the outset, we note the significant portions of the insurance policy in question here: "Loss on building items shall be payable to mortgagee or trustee as their interest may appear at time of loss subject to mortgagee clause (without contribution) printed elsewhere in this policy." The mortgagee's clause provides: "This policy is in the interest of the mortgagee only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property nor by any foreclosure or other proceedings relating to the selling of the property, nor by any change of the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided that the mortgagee shall notify this company of any change of ownership or increase of hazard which shall come to the knowledge of said mortgagee."

It must be remembered that the purpose of the loss payable clause to the mortgagee in an insurance policy such as the one here is to protect the security interest of one who has advanced money to others for the purchase of property, and who has taken, usually, a note and deed of trust, as in this case, or mortgage on the subject property. The policy, in case of loss of or damage to the property, will pay to the extent of the mortgagee's interest in the property whatever that amount is so that the mortgagee, who has advanced money on the property, will be protected.

We think the learned and able trial judge acted properly in rendering judgment as a matter of law that since the mortgagee's indebtedness had been cancelled by the bid at the foreclosure sale, there was no liability to appellants on the part of appellee. Succinctly stated, no mortgagee's indebtedness; no indebtedness or liability to mortgagee from the insurance company.

The law in most jurisdictions seems to be that if the mortgage debt is satisfied by the proceeds of sale, as reflected in the mortgage or deed of trust in this case, the mortgagee is entitled to no further payment on account thereof. As stated by the Alabama Supreme Court in *Nationwide Mutual Fire Insurance Co. v. Wilborn*, 291 Ala. 193, 279 So.2d 460 (1973): "If the foreclosure does fully satisfy the mortgage debt, he, [mortgagee], of course, has no additional recourse against the insurance company, as his debt has been fully satisfied. (Citing cases.)"

Apparently the only Texas case on the point is a recent one, *Campagna v. Underwriters at Lloyd's London*, 549 S.W.2d 17 (Tex.Civ.App.1977, writ ref. n. r. e.), a case very similar to this one on its facts. There, appellant also voluntarily reduced the indebtedness under a mortgage note by an amount reflected in a trustee's deed, as was the situation in the case sub judice. The mortgage in *Campagna*, as here, purchased the property at a foreclosure sale and then sought to recover the full amount of the mortgage debt existing *before the foreclosure sale*. The Dallas Court of Civil Appeals rejected the claim for the full amount of the mortgage and limited the amount of the recovery to the deficiency remaining on the note after the sale, which was $408.03, saying: "Campagna voluntarily reduced the indebtedness by an amount reflected in the trustee's deed and, therefore, may recover from the insurer, as from the mortgagor, only that remaining portion of the debt."

There are many other cases in other jurisdictions holding to the same effect. *Rosenbaum v. Funcannon*, 308 F.2d 680 (9th Cir. 1962); *Insurance Co. of No. Amer. v. Citizens Ins. Co. of N. J.*, 425 F.2d 1180 (7th Cir. 1970); *Whitestone Savings & Loan Ass'n v. Allstate Ins. Co.*, 34 A.D.2d 787, 311 N.Y.S.2d 75 (1970).

Appellants' points of error one and seven are therefore overruled.

■ As to the matters raised in appellants' second, third and fourth points of error we are constrained to note that the evidence simply does not support any misrepresentations as to the effect of the bid-

ding in of the property for the full amount of the debt by appellants at the foreclosure. The subject of bidding or the amounts to be bid was never discussed with Gayle Haggard, the claims adjuster for appellee, nor is there any evidence that there was any discussion between the parties regarding the appellant's insurable interest as a mortgagee. It is apparent, quite frankly, from the evidence that appellant Hockert, a member of the Texas bar, formed his own legal opinion, without any actual research, as to appellants' rights based solely on his own review of the standard Texas fire insurance policy issued by appellee. We do not find anywhere in this record, either in the testimony of Herbert Barrett, the sales agent for appellee, or Gayle Haggard, its claims adjuster, any misrepresentation of a material fact. What Gayle Haggard, who was simply a young trainee adjuster for the insurance company, told appellant Helmer was that the policy would be paid according to its terms, that it would be honored within the provisions of the policy. It was not Gayle Haggard or appellee insurance company that disappointed and frustrated appellants in their claim for the insurance proceeds; it is the law which does that to appellants.

In their brief appellants say that "Gayle Haggard (the adjuster) . . . advised that the appellants' rights would be honored consistent with policy of insurance as those interests appeared on the date of the loss." We do not find such a statement in this record. What we do find is a statement from Haggard to the effect "that the policy was strictly in force at the time of the fire." Nowhere in this record do we find any representation that appellants would be paid the amount of their interest on the date of the fire notwithstanding prior payment from another source. Actually, if appellant's position is tenable and sound, then all mortgagees situated as these two were, would in effect be afforded a double recovery-recoupment of their debt from the insurance plus title to and possession of the damaged property.

Moreover, we find no evidence of any misrepresentation, in violation of Article 21.21 of the Insurance Code or Sec. 17.50 of the Business & Commerce Code that the insurance company pursued an unconscionable course of conduct by failing to tell appellants of the legal effect of the payment by them at the foreclosure sale of the full amount of the indebtedness. We also fail to find any such duty or requirement as urged by appellants. We think the question of the effect of the bidding in of the property at the foreclosure sale for the full amount of the indebtedness was a question of law, and that the insurance company is not bound to give appellants an opinion on the law on any action taken by appellants.

The trial judge, in explaining his withdrawal of the case from the jury, when addressing the jury after such action had been taken, put it quite aptly, succinctly and correctly, when he said: "All they held was a promissory note and they were entitled to be paid on their promissory note and they have been paid on their promissory note so they haven't been damaged."

Appellants' second, third and fourth points of error are overruled. In their fifth and sixth points of error appellants contend that the evidence raised both issues of estoppel by contract or deed or equitable estoppel which should have been submitted by the trial court. We disagree. As previously stated we do not find anywhere in this record, which we have carefully read, any misrepresentation on the part of any employee of appellee insurance company with regard to the interests of the mortgagee-appellants which was in any way inconsistent with the terms of the insurance policy. In the absence of any affirmative statement from appellants that they intended to purchase the property, appellee would have no reason to consider the effect of such a purchase. Appellants here could have bid the property in for one dollar at the foreclosure sale, in which event they would have retained an interest in the insurance policy for the deficiency of the mortgage, i.e., the mortgage debt of $6,725.70 less $1.00. See *Campagna, supra.*

Appellant Helmer admitted, in his testimony, that Gayle Haggard, the claims adjuster, did not discuss the bid at the foreclosure sale, tell him what or how to bid, or give him any details of the bidding procedure at the foreclosure sale. The stark truth is, as we have previously indicated, that appellant Hockert, who was a lawyer, interpreted this insurance contract himself and concluded that their bidding in the property for the full amount of the indebtedness would not jeopardize their collection of the insurance proceeds. He was wrong.

Appellants' fifth and sixth points of error are overruled.

The judgment is affirmed.