**Donald H. SMITH and Pat Smith, Appellants,**

v.

**TEXAS FARMERS INSURANCE COMPANY, Appellee.**

No. 04-01-00600-CV.

Court of Appeals of Texas, San Antonio.

May 22, 2002.

Rehearing Overruled June 11, 2002.

Nelson Skinner, Law Offices of Nelson Skinner, San Antonio, for Appellant.

Laurene S. Kurth, Jones Kruth, Andrews & Ortiz, P.C., San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, CATHERINE STONE, Justice, and SANDEE BRYAN MARION, Justice.

## OPINION

SANDEE BRYAN MARION, Justice.

This appeal arises from a property insurance dispute between Donald and Pat Smith and Texas Farmers Insurance Company. In February 1991, the Smiths sold a house to Ron and Serena Levine for $169,000. As part of the financing, the Smiths loaned $144,000 to the Levines, in return for which the Smiths took a deed of trust lien against the dwelling. Under the deed of trust, the Levines were obligated to obtain an insurance policy on the house, naming the Smiths as mortgagees and first party beneficiaries under the policy. The Levines obtained such a policy from Farmers, under which Farmers was required to "pay for any loss of or damage to buildings or structures to the mortgagee shown on the declarations page as interests appear."

This dispute arose when the Levines made several property damage claims on the house to Farmers. Shortly after the claims were made, the mortgage debt owed by the Levines to the Smiths was offset by a 1993 judgment in favor of the Levines against the Smiths. Farmers, thereafter, cancelled the Smiths' mortgagee interest under the insurance policy and issued the loss-payment checks directly to the Levines.

The Smiths sued Farmers arguing, in various causes of action, that because they had a mortgagee interest in the house at

the time the loss claims were filed, the checks should have been issued to them. The district court rendered summary judgment in favor of Farmers on all of the Smiths' claims and awarded attorney's fees to Farmers. In twelve points of error, the Smiths challenge the court's judgment. We find that the Smiths' interest in the mortgage note and insurance policy was extinguished by the 1993 judgment and affirm the court's summary judgment on that basis. However, we find that Farmers was not entitled to attorney's fees under the law and reverse on that issue. Accordingly, we affirm in part and reverse in part.

## FACTUAL & PROCEDURAL BACKGROUND

In 1993, the Levines sued the Smiths for fraud, misrepresentation, and violations of the Deceptive Trade Practices Act ("DTPA"). The Levines alleged that the Smiths knew, before the sale, that the house had foundation defects, but they did not disclose the defects to the Levines. The Smiths counterclaimed against the Levines, asserting that the Levines were in default on the mortgage note. The jury returned its verdict on December 8, 1993, finding the Smiths liable to the Levines for fraud and DTPA violations, and awarding damages in the amount of $243,644. The jury also found that the Levines owed the Smiths $136,065.95 on the mortgage note. In the final judgment, dated December 23, 1993, the trial court "offset and deducted from [the Levines'] recovery" "the full amount of the note balance, accrued interest, [and] attorneys' fees awarded to" the Smiths. The judgment stated, "by reason of the allowance of an offset for the entire balance of the real estate lien note, said note is hereby fully and finally paid and discharged, and all liens securing said note . . . are hereby extinguished and released." The judgment also extinguished and re-

leased the vendor's lien contained in the warranty deed. In September 1995, a panel of this court affirmed the 1993 judgment. *See Smith v. Levine*, 911 S.W.2d 427 (Tex.App.—San Antonio 1995, writ denied). This court's mandate issued in 1996.

On December 10, 1993, the Levines filed a claim with Farmers for damage caused by plumbing leaks in a downstairs bathroom on November 1, 1993. A structural engineer retained by Farmers determined the leak had no effect on the foundation. Farmers issued a property-loss check, dated February 9, 1994, payable to the Levines and the Smiths in the amount of $3,095.05. On February 8, 1994, the Levines filed another claim with Farmers for damage caused by plumbing leaks in an upstairs bathroom on December 11, 1993. Farmers issued a property-loss check, dated February 14, 1994, payable to the Levines and the Smiths in the amount of $4,686.14. The February 9th check and the February 14th check were both delivered to the Levines.

On March 1, 1994, the Levines notified Farmers that the Smiths had been removed as lienholders and there was no outstanding mortgage on the house. The Levines asked Farmers to reissue the February 14th check payable to them. On March 3rd, after Farmers received the Levines' March 1st letter and a copy of the 1993 judgment, Farmers mailed to the Smiths a Notice of Cancellation of Mortgagee or Other Interest. On March 9th, Farmers reissued the February 14th check, payable to the Levines. Farmers issued supplemental property-loss checks to the Levines for the December 10th claim ($3,837.42) and the February 8th claim ($374.85).

In October 1999, the Smiths sued the Levines and Farmers, alleging a variety of

causes of actions, all of which centered on Farmers's payment of the December 10th and February 8th claims to the Levines and cancellation of the Smiths' mortgagee's interest under the insurance policy. The Smiths contended that the loss-payment checks should have been made payable to them as mortgagees under the policy, and Farmers's fraudulent concealment of the checks resulted in an increased damage award to the Levines under the 1993 judgment.

Farmers moved for summary judgment on all of the Smiths' causes of action on the grounds that the Smiths had no mortgagee rights under the insurance policy because their status as mortgagees was extinguished by the 1993 judgment; the Levines' insurance claims did not involve foundation damage, therefore, the alleged "concealment" of the claims did not affect the 1993 judgment; and the Smiths' claims were barred by collateral estoppel, res judicata, and the applicable statute of limitations. The trial court granted Farmers's motion for summary judgment without stating its grounds.

### SUMMARY JUDGMENT ON THE SMITHS' CAUSES OF ACTION

**Standard of Review**

Under traditional summary judgment standards, a party moving for summary judgment has the burden of establishing as a matter of law that no genuine issue of material fact exists as to one or more essential elements of the plaintiff's cause of action. *Casso v. Brand,* 776 S.W.2d 551, 556 (Tex.1989); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). If the defendant meets this burden, the plaintiff must then raise a genuine issue of material fact on that element. *Gonzalez v. City of Harlingen,* 814 S.W.2d 109, 112 (Tex.App.—Corpus Christi 1991, writ denied). In reviewing a summary judgment, an appellate court accepts as true all evidence supporting the non-movant. *Nixon,* 690 S.W.2d at 549. All inferences are indulged in favor of the non-movant, and all doubts are resolved in his favor. *Id.*

**The 1993 Judgment**

The focus of this dispute is the effect of the 1993 judgment on the Smiths' interest as mortgagees under the insurance policy. Farmers asserts that the judgment's satisfaction of the mortgage debt extinguished the Smiths' mortgagees' interest; therefore, they were barred from recovering any loss-payments issued after rendition of the judgment. The Smiths contend they were entitled to the December 10th and February 8th loss-payments because the policy provides for their right to receive loss-payments even if foreclosure proceedings have begun on the property. Because the house was not foreclosed upon and rendition of the 1993 judgment had no affect on the mortgage debt, the Smiths conclude their rights under the policy continued.

The purpose of a loss-payable clause in an insurance policy is to protect the security interest of the mortgagee who has advanced money to others for the purchase of property, and who has taken a note and deed of trust, or mortgage on the subject property. *Helmer v. Texas Farmers Ins. Co.,* 632 S.W.2d 194, 196 (Tex. App.—Fort Worth 1982, no writ). A mortgagee's interest under an insurance policy containing a mortgagee loss-payable clause is limited to the indebtedness that the mortgagor owes under the note and mortgage. *Id.; Beneficial Standard Life Ins. Co. v. Trinity Nat'l Bank,* 763 S.W.2d 52, 55 (Tex.App.—Dallas 1988, writ denied); *Campagna v. Underwriters at Lloyd's London,* 549 S.W.2d 17, 19 (Tex.Civ.App.—

Dallas 1977, writ ref'd n.r.e.). Therefore, while the mortgage debt remained outstanding, the Smiths maintained their status as mortgagees under the insurance policy, and they were entitled to loss-payments pursuant to the policy.

The Smiths argue that the mortgage debt offset in the judgment was not effective to extinguish their mortgagees' interest because the appeal of the 1993 judgment continued until 1996. The Smiths rely on the general proposition that a lawsuit does not end with rendition of a judgment and a trial court may protect the litigants' rights and preserve the property involved in the litigation pending final disposition of the case on appeal. *See Gainesville Oil & Gas Co., Inc. v. Farm Credit Bank of Texas,* 847 S.W.2d 655, 659 (Tex.App.—Texarkana 1993, no pet.). The Smiths argue that their rights as mortgagees continued until this court's mandate issued on June 3, 1996 and the Levines signed a release of judgment on June 11, 1996. The Smiths' argument confuses the finality of a judgment with execution on the judgment.

■ An action remains pending in the trial court until all issues have been determined by the court, a final judgment has been rendered, and all post-trial motions have been disposed of. *See Thomas v. Oldham,* 895 S.W.2d 352, 356 (Tex.1995); *St. Paul Surplus Lines Ins. Co. v. Dal-Worth Tank Co.,* 917 S.W.2d 29, 43 (Tex. App.—Amarillo 1995), *aff'd in part & rev'd in part on other grounds,* 974 S.W.2d 51 (Tex.1998) (per curiam) (op. on reh'g). However, even though an appeal may be pending, a judgment is final in the sense that execution will issue in the absence of a supersedeas bond. *Graham v. Thomas D. Murphy Co.,* 497 S.W.2d 639, 641 (Tex.Civ. App.—Amarillo 1973, writ ref'd n.r.e.).

■ A final judgment may be superseded, pending appeal, even though the judgment does not require a writ of execution or other process to enforce it. *State ex rel. State Highway & Pub. Transp. Comm'n v. Schless,* 815 S.W.2d 373, 375 (Tex.App.—Austin 1991, orig. proceeding); *Continental Oil Co. v. Lesher,* 500 S.W.2d 183, 185 (Tex.Civ.App.—Houston [1st Dist.] 1973, no writ). Supersedeas preserves the status quo of the matters in litigation as they existed before the issuance of the order or judgment from which an appeal is taken. *In re Tarrant County,* 16 S.W.3d 914, 918 (Tex.App.—Fort Worth 2000, no pet.). Therefore, if the Smiths had desired to suspend the offset of their recovery under the 1993 judgment against the mortgage note, they should have filed a supersedeas bond. Because they did not obtain such a bond, execution of the judgment was not suspended, and offset of the Smiths' recovery against the Levine's outstanding mortgage debt operated to extinguish the mortgage debt.

■ Although the Levines filed property-loss claims before rendition of the 1993 judgment, the claims were paid after rendition of the judgment, by which time the debt owed by the Levines to the Smiths under the mortgage note had been paid. Because the mortgage note was satisfied, the Smiths no longer had an interest in the insurance policy as mortgagees, and Farmers was not liable to the Smiths for any loss-claims paid under the policy after rendition of the 1993 judgment. *See Helmer,* 632 S.W.2d at 196 ("Succinctly stated, no mortgagee's indebtedness; no indebtedness or liability to mortgagee from the insurance company."). Similarly, because the judgment satisfied the mortgage debt without need for foreclosure proceedings, that there was no foreclosure is irrelevant.

Because the 1993 judgment extinguished all rights the Smiths had under the policy, any claims raised by the Smiths with re-

gard to their rights under the policy were likewise extinguished.

**Notice of Cancellation**

■ The Smiths also contend they were entitled to the loss-payments received by the Levines because the March 3, 1994 cancellation notice states that the coverage extended to them under the policy was cancelled effective March 18, 1994. The Mortgage Clause of the policy provides that Farmers will "pay for any loss of or damage to buildings or structures to the mortgagee shown on the declarations page as interests appear." Therefore, Farmers had a duty to the Smiths for so long as the Smiths maintained their status as mortgagees. Among the duties owed to the Smiths was notice to them in the event the policy was cancelled. The Mortgage Clause provides that, if the policy is cancelled by Farmers, Farmers will give the mortgagee the same number of days' notice that it gives to the insured. If the policy is cancelled by the insured, Farmers will give the mortgagee ten days' notice. Therefore, Farmers's duty to notify the Smiths of cancellation was triggered only if and when the policy itself was cancelled. There is no evidence the policy was cancelled by either the Levines or Farmers, and the Mortgage Clause does not provide for notice to the mortgagee in the event the mortgagee's interest in the policy is extinguished by virtue of satisfaction of the mortgage note. To the extent Farmers had a duty to notify the Smiths that their interest as mortgagees had been cancelled, that duty arose when Farmers first became aware that the mortgage note had been satisfied.

Farmers contends it did not know about the 1993 judgment until March 1, 1994, when the Levines informed Farmers that the Smiths were no longer first lien holders on the mortgage note and that there was no mortgage on the property. At about this same time, Farmers obtained a copy of the 1993 judgment. The cancellation notice was dated March 3, 1994.

To controvert Farmers's assertion that it did not know about the 1993 judgment until March 1, 1994, the Smiths relied on Farmers's admission in its motion that it had retained legal counsel; the first property-loss check was forged by Mr. Levine; the second property-loss check was reissued payable only to the Levines; the Smiths received a renewal certificate effective April 6, 1994; Farmers's "fixed purpose" was to affect the outcome of the 1993 litigation about which it was aware; and Farmers told the Smiths that no claims had been filed by the Levines. Farmers's statement that it had retained counsel is contained in a footnote in its motion for summary judgment, in which it states "Other checks issued by Farmers in connection with the December 10, 1993 and February 8, 1994 insurance claims were for (a) plumbing, engineering, and legal fees to third parties hired by Farmers to assist it. . . ."

None of the Smiths' summary judgment evidence controverts Farmers's assertion that it did not become aware of the 1993 judgment until March 1, 1994. Therefore, to the extent Farmers had a duty to notify the Smiths that their interest as mortgagees had been cancelled, that duty arose when it received the Levines' March 1, 1994 letter and it obtained a copy of the 1993 judgment. Farmers fulfilled any duty it had when it mailed its March 3, 1994 cancellation notice. As to the Smiths' assertion that they did not receive the notice until July 2000, the Smiths suffered no harm because their interest as mortgagees was extinguished upon rendition of the 1993 judgment.

**Damage Claims**

The Smiths also assert that the December 10th and February 8th claims involved foundation damage, and Farmers's fraudulent concealment of the two insurance claims resulted in a double recovery for the Levines—damages under the 1993 judgment and the loss-payments from Farmers.

In support of its motion for summary judgment, Farmers attached the affidavit of Mike Aleman, a Farmers claims superintendent, and a copy of an engineering report prepared by DEH Structural Engineering, Inc. ("DEH") in connection with the December 10th claim. Aleman said that after a plumber determined that plumbing leaks were present at the dwelling, Farmers engaged DEH to evaluate the damage, if any, attributable to the downstairs plumbing leak. DEH concluded the plumbing leak in the downstairs bathroom damaged the floor framing underneath the room, but did not damage the foundation. Based on DEH's report, Farmers issued the February 9th check for floor framing and related cosmetic repairs. With regard to the February 8th claim, Aleman said that Farmers inspected the house and, based on observed moisture damage to the ceilings and walls, issued the February 14th check for repairs to the upstairs ceiling and wall, and related cosmetic repairs due to the upstairs bathroom leak. Therefore, Farmers's summary judgment evidence established that the Levines submitted the December 10th and February 8th claims for property damage incurred in November and December 1993 respectively, and that this damage was not related to the foundation as it existed when the Levines purchased the house from the Smiths in 1991.

The Smiths contend it is not relevant that the November and December bathroom leaks did, or did not, affect the foundation because the date of loss under both claims was prior to the December 23, 1993 judgment and the damages awarded to the Levines under the judgment were based, in part, on these damages. Therefore, the Smiths argue that, but for Farmers's concealment of the claims, they would have obtained a new trial or a reduction in the judgment. We disagree.

■ Farmers conclusively established that the Levines' December 10th and February 8th claims were unrelated to the foundation problems that formed the basis of the Levines' lawsuit against the Smiths. The 1993 lawsuit involved the Levines' allegations that the Smiths knew the house had foundation defects in 1991 and they fraudulently concealed those defects from the Levines. Because neither the December 10th claim nor the February 8th claim involved any 1991 foundation damage, Farmers's payment of the claims to the Levines would not have affected the damages awarded to the Levines under the 1993 judgment based on the Smiths' fraud.

## Conclusion

We affirm the summary judgment in favor of Farmers on the Smiths' causes of action. Because we affirm the summary judgment on other grounds, we do not reach the issue of whether Farmers was entitled to summary judgment on the grounds that the Smiths' claims were barred by collateral estoppel, res judicata, and the statute of limitations.

### SEVERANCE

The Smiths argue that severance of Farmers's summary judgment from their claims against the Levines was improper because none of the conditions upon which severance can be ordered were met.

■ A trial court has broad discretion in the matter of severance and consolidation of causes, and the trial court's decision to grant a severance will not be

reversed unless it has abused its discretion. *Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.,* 793 S.W.2d 652, 658 (Tex.1990). A claim is properly severable if the controversy involves more than one cause of action, the severed claim is one that would be the proper subject of a lawsuit if independently asserted, and the severed claim is not so interwoven with the remaining action that they involve the same facts and issues. *Id.* The controlling reasons for a severance are to do justice, avoid prejudice and further convenience. *Id.*

■■■■ Where summary judgment in favor of a single defendant is proper in a case with multiple defendants, severance of that claim is also proper so that it may be appealed. *Cherokee Water Co. v. Forderhause,* 641 S.W.2d 522, 526 (Tex.1982); *Guidry v. National Freight, Inc.,* 944 S.W.2d 807, 812 (Tex.App.—Austin 1997, no writ). Because we hold that Farmers was entitled to summary judgment on the Smiths' causes of action, the trial court did not abuse its discretion in severing the Smiths' claims against Farmers from those against the Levines.

## ATTORNEY'S FEES

Finally, the Smiths assert the trial court erred in awarding attorney's fees to Farmers because Farmers had no legal basis for recovery of attorney's fees. The trial court awarded Farmers $88,000 in attorney's fees, with additional fees payable if the Smiths unsuccessfully pursued an appeal.

■■■■ Farmers asserts it is entitled to attorney's fees because it alleged the Smiths' lawsuit was frivolous in its answer and because it was the "prevailing party" entitled to fees under Civil Practice and Remedies Code section 38.001(8). A party is entitled to recover attorney's fees from the opposing party if it is expressly permitted by statute or by contract between the parties. *Holland v. Wal–Mart Stores, Inc.,* 1 S.W.3d 91, 95 (Tex.1999). Here, neither party contends the insurance policy allows Farmers to recover attorney's fees from the Smiths; therefore, the only basis on which Farmers may recover attorney's fees is provided in Section 38.001, which allows a party to recover reasonable attorney's fees "if the claim is for ... an oral or written contract." Tex. Civ. Prac. & Rem.Code Ann. § 38.001(8) (Vernon 1997). The issue, then, is whether a prevailing defendant in a breach of contract suit is entitled to attorney's fees.

■■■■ To recover attorney's fees under Section 38.001, a party must prevail on a claim for which attorney's fees are recoverable and recover damages. *Green Internat'l, Inc. v. Solis,* 951 S.W.2d 384, 390 (Tex.1997). Section 38.001 does not provide for attorney's fees in the pure defense of a claim; however, if the plaintiff's breach of contract claim and the defendant's counterclaim encompass matters that are indistinguishable and arose from the same transactions, and the same facts required to prosecute the claim are required to defend against the counterclaim, then attorney's fees may be appropriate. *De La Rosa v. Kaples,* 812 S.W.2d 432, 434 (Tex.App.—San Antonio 1991, writ denied). To qualify as a claim for affirmative relief, a defensive pleading must allege that the defendant has a cause of action independent of the plaintiff's claim, on which it could recover benefits, compensation or relief, even though the plaintiff may abandon its cause of action or fail to establish it. *General Land Office v. OXY U.S.A., Inc.,* 789 S.W.2d 569, 570 (Tex. 1990); *see also De La Rosa,* 812 S.W.2d at 434–35.

■■■■ Farmers's affirmative defenses may have formed a basis for its counter-

claim for attorney's fees if Farmers had sought relief independent of its defense of the Smiths' breach of contract claim. But Farmers did not present its affirmative defenses as separate counterclaims for affirmative relief. Nor did Farmers move for summary judgment on the ground that the Smiths breached the insurance policy or that their claims lacked merit. Finally, Farmers did not recover damages. Therefore, Farmers was not entitled to an award of attorney's fees.

## CONCLUSION

We reverse the trial court's award of attorney's fees and affirm the trial court's judgment in all other respects.