

# MEMORANDUM OPINION

No. 04-08-00457-CV

**CWCAPITAL ASSET MANAGEMENT LLC**, As Special Servicer for that Trust Entitled
LaSalle Bank N.A. f/k/a LaSalle National Bank, As Trustee for the Registered Holders of DLJ
Mortgage Acceptance Corp., Commercial Mortgage Pass-Through Certificates, Series 1997-CF2,
Appellant

v.

**WAUSAU BUSINESS INSURANCE COMPANY**, Wausau Underwriters Insurance Company,
Liberty Mutual Insurance Company, Wausau Insurance Companies, and Liberty Mutual Property,
Appellees

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2004-CI-10086
Honorable Joe Frazier Brown, Jr., Judge Presiding

Opinion by:     Catherine Stone, Chief Justice

Sitting:        Catherine Stone, Chief Justice
                Karen Angelini, Justice
                Rebecca Simmons, Justice

Delivered and Filed:   July 1, 2009

AFFIRMED

CWCapital Asset Management LLC, as special servicer for that trust entitled LaSalle Bank

N.A. f/k/a LaSalle National Bank, as trustee for the registered holders of DLJ Mortgage Acceptance

Corp., Commercial Mortgage Pass-Through Certificates, Series 1997 - CF2, ("LaSalle"), appeals a

summary judgment granted in favor of Wausau Business Insurance Company, Wausau Underwriters Insurance Company, Liberty Mutual Insurance Company, Wausau Insurance Companies, and Liberty Mutual Property ("Wausau"). The issues presented in this appeal hinge on whether LaSalle was owed a deficiency on a loan after a foreclosure and settlement. LaSalle contends the evidence conclusively established it was owed a deficiency or, at the least, genuine issues of material fact are raised with regard to whether it was owed a deficiency. Wausau responds LaSalle was not owed a deficiency because: (1) the loans at issue were nonrecourse; and (2) LaSalle released any deficiency amounts owed to it. Because we believe LaSalle released any deficiency that might have been owed to it, we affirm the trial court's judgment.

## BACKGROUND

On June 21, 1996, Preferred Riverwalk, L.P. ("Preferred Riverwalk") borrowed $12,300,000 from Column Financial Inc. After borrowing an additional $1,174,744, the total amount Preferred Riverwalk owed Column Financial Inc. on June 30, 2007 was $13,275,000 (the "Preferred Riverwalk Loan"). As security for the Preferred Riverwalk Loan, Preferred Riverwalk executed a deed of trust conveying a security interest in a hotel property located at 110 Lexington Avenue, San Antonio, Texas (the "Texas Hotel"). From 1999 to 2004, Wausau insured the Texas Hotel.

Preferred Riverwalk also guaranteed loans totaling $35,725,0000 (the "Guaranteed Loans") to four of its affiliates, which owned four hotels in Florida (the "Florida Hotels"). The Guaranteed Loans were secured by a junior security interest in the Texas Hotel. The Preferred Riverwalk Loan and the Guaranteed Loans were cross-defaulted and cross-collateralized. In June of 2002, all of Column Financial's rights in the Preferred Riverwalk Loan and the Guaranteed Loans were assigned to LaSalle.

With certain exceptions, the Preferred Riverwalk Loan and the Guaranteed Loans were nonrecourse loans. LaSalle generally identifies these exceptions as "fraud, material misrepresentation, misappropriation of funds, and property damage resulting from intentional misconduct or gross negligence."

In August of 2002, Preferred Riverwalk and its affiliates (the "Preferred Parties") defaulted on their loans. In October of 2002, LaSalle gave the Preferred Parties notice of the default and accelerated the amounts owed under the loans. In April of 2004, LaSalle instituted judicial foreclosure proceedings relating to the Florida Hotels. Beginning in June and July of 2004, the Preferred Parties were involved in litigation with LaSalle in Texas and in New York.

On July 2, 2004, Preferred Riverwalk sued Wausau asserting various causes of action arising from Wausau's purported failure to properly adjust and address insurance claims submitted over a period of three years for alleged covered losses to the Texas Hotel. On July 6, 2004 and September 7, 2004, LaSalle conducted a nonjudicial foreclosure of the Texas Hotel. LaSalle was the high bidder at the foreclosure sale. LaSalle alleged that after the foreclosure, the deficiency balance was $9,695,194.03.

In December of 2004, the Preferred Parties entered into a Settlement Agreement with LaSalle. In the Settlement Agreement, Preferred Riverwalk assigned LaSalle its rights in the lawsuit against Wausau. Preferred Riverwalk's affiliates agreed to the immediate entry of a judgment of foreclosure with regard to the Florida Hotels and agreed to take all actions necessary to finalize the foreclosures. Both sides released each other from all claims arising out of or related to the loans.

In January and April of 2005, LaSalle foreclosed on the Florida Hotels. The Texas Hotel and the Florida Hotels were subsequently sold to third parties. After the sales, LaSalle alleged a

deficiency balance of $10,795,194.03 remained with regard to the Preferred Riverwalk Loan and a deficiency balance of $24,203,962.55 remained with regard to the Guaranteed Loans.

In November of 2006, Wausau filed a plea to the jurisdiction asserting Preferred Riverwalk did not have standing to sue Wausau. LaSalle attempted to substitute as the plaintiff in the lawsuit asserting rights as an assignee; however, the trial court agreed that the insurance policies prohibited any assignment. LaSalle was subsequently permitted to substitute as Preferred Riverwalk's mortgagee.

In February of 2008, Wausau filed a traditional and no evidence motion for summary judgment. Wausau presented two grounds for summary judgment to the trial court: (1) LaSalle's mortgagee interest was extinguished by the foreclosure of the Texas Hotel because the loan was non-recourse; and (2) LaSalle's mortgage interest was extinguished by the settlement agreement because it released any alleged deficiency. The trial court granted summary judgment in favor of Wausau.

LaSalle filed a motion for new trial asserting the settlement agreement released the parties but not LaSalle's claims against the collateral, which included the insurance policy proceeds. The trial court denied the motion for new trial, and LaSalle appealed.

## STANDARD OF REVIEW & APPLICABLE LAW

We review a summary judgment *de novo*. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156-57 (Tex. 2004). We consider the evidence in the light most favorable to the nonmovant and indulge all reasonable inferences and resolve any doubts in the nonmovant's favor. *Id*. at 157. We will affirm a traditional summary judgment only if the movant established there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law on a ground expressly set forth in the motion. *Id*. We will affirm a no evidence summary judgment if the

nonmovant failed to produce summary judgment evidence raising a genuine issue of material fact as to the challenged element of the cause of action. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced. *Id.*

A party must have an insurable interest in the insured property to recover under an insurance policy. *Jones v. Tex. Pac. Indem. Co.*, 853 S.W.2d 791, 794 (Tex. App.—Dallas 1993, no writ). Whether the parties have an insurable interest in the property is a question of law, not fact. *Id.* Similarly, courts construe unambiguous contracts, like the settlement agreement in this case, as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

The purpose of a loss-payable clause in an insurance policy is to protect the security interest of the mortgagee, who has advanced money to others for the purchase of property and who has taken a note and deed of trust, or mortgage on the subject property. *Smith v. Tex. Farmers Ins. Co.*, 82 S.W.3d 580, 584 (Tex. App.—San Antonio 2002, pet. denied); *Helmer v. Tex. Farmers Ins. Co.*, 632 S.W.2d 194, 196 (Tex. App.—Fort Worth 1982, no writ). A mortgagee's interest under an insurance policy containing a mortgagee loss-payable clause is limited to the indebtedness that the mortgagor owes under the note and mortgage. *Smith*, 82 S.W.3d at 584-85; *Campagna v. Underwriters at Lloyd's London*, 549 S.W.2d 17, 19 (Tex. Civ. App.—Dallas 1977, writ ref'd n.r.e.). While the mortgage debt remains outstanding, the mortgagee maintains its status as mortgagee under the insurance policy. *Smith*, 82 S.W.3d at 585. Once the mortgage debt is satisfied, however, the mortgagee no longer has an interest under the insurance policy, and the insurance company is not liable to pay the mortgagee for any loss-claims paid under the policy after the mortgage debt is satisfied. *Id.*; *Beneficial Standard Life Ins. Co. v. Trinity Nat'l Bank*, 763 S.W.2d 52, 55 (Tex.

App.—Dallas 1988, writ denied). "Succinctly stated, no mortgagee's indebtedness; no indebtedness or liability to mortgagee from the insurance company." *Helmer*, 632 S.W.2d at 196.

**DISCUSSION**

Wausau contends that even if a deficiency of $9,695,194.03 remained as alleged by LaSalle, the deficiency was satisfied or extinguished by either the nonrecourse nature of the debt or the release contained in the Settlement Agreement. *See generally Fireman's Fund Ins. Co. of Tex. v. Jackson Hill Marina, Inc.*, 704 S.W.2d 131, 136 (Tex. App.—Tyler 1986, writ ref'd n.r.e.) (recognizing in a typical foreclosure, when a mortgagee reduces the mortgage debt by purchasing the property, the amount of the mortgagee's interest is limited to the amount of the deficiency remaining on the note after the sale). We believe Wausau's contention that any deficiency was released by the Settlement Agreement is determinative of this appeal.

Paragraph 14 of the Settlement Agreement provides:

The Trust [LaSalle], by and through Special Servicer, except in connection with the obligations set forth in this Agreement, hereby releases, acquits, exonerates, and forever discharges the Preferred Parties, and their respective past and present officers, directors, partners, agents, trustees, successors, representatives, heirs, assigns, employees, members, attorneys, officers, shareholders, and investors, from any and all claims and obligations, suits, debts, actions or causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, accrued or not yet accrued, now existing, or which could have been brought, from the beginning of time until the date of this Agreement arising out of or relating in any way to the Preferred Loans.

The Preferred Loans included the Preferred Riverwalk Loan and the Guaranteed Loans.

LaSalle first argues the Settlement Agreement's release only released the parties — not the collateral. The case LaSalle cites as support for this argument is *U.S. Bank National Association v. Safeguard Insurance Co.*, 422 F.Supp.2d 698 (N.D. Tex. 2006). In that case, Safeguard insured four of the mortgagor's properties on which U.S. Bank had a lien. *Id.* at 701-02. U.S. Bank foreclosed

on three properties but not on the fourth. *Id.* at 702. U.S. Bank expressly retained its lien against the fourth property in the substitute trustee's deed documenting the foreclosure. *Id*. at 702-03. The sole issue presented on appeal was whether U.S. Bank had an insurable interest in two of the foreclosed properties, and that issue turned on whether a deficiency remained on the loan. *See id.* at 704. The court concluded a deficiency existed, noting the loan was for $45.5 million and only $27 million was bid on the foreclosed properties. *Id.* at 708-09.

The flaw in LaSalle's argument and its reliance on *U.S. Bank* is LaSalle's focus on its rights against the collateral. The proper focus is on the existence of mortgage indebtedness. The determination of whether a deficiency existed was the focus of the court in *U.S. Bank*. Finding mortgage debt existed in the form of a deficiency, the court in *U.S. Bank* held that U.S. Bank had a right to the insurance policy proceeds. The court's conclusion that U.S. Bank maintained its mortgagee interest was therefore based on the existence of mortgage debt, not on U.S. Bank's rights to collateral.

Unlike *U.S. Bank*, LaSalle released all mortgage debt in the Settlement Agreement. Because all mortgage debt was released, LaSalle no longer had an interest under the insurance policy. *See Smith*, 82 S.W.3d at 585; *Beneficial Standard Life Ins. Co.*, 763 S.W.2d at 55; *Helmer*, 632 S.W.2d at 196. LaSalle thus has no basis upon which to recover from Wausau.

LaSalle also claims the Settlement Agreement is ambiguous. As a threshold matter, however, we note that LaSalle did not raise the ambiguity issue prior to or during trial and did not allege ambiguity in any live trial pleading. LaSalle has thus not preserved its claim of ambiguity for appellate review. *See Newman v. Tropical Visions, Inc.*, 891 S.W.2d 713, 720 (Tex. App.—San Antonio 1994, writ denied) (holding an ambiguity issue is waived if not properly pled).

In any event, we are not persuaded by LaSalle's ambiguity complaint on appeal. A contract is ambiguous only when its meaning is uncertain or it is reasonably susceptible to more than one meaning. *Coker*, 650 S.W.2d at 393-94. Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in the light of the circumstances present when the contract was entered. *Id.* at 394.

LaSalle contends the Settlement Agreement is ambiguous because if the release is given effect, the phrase "except in connection with the obligations set forth in this Agreement" is rendered meaningless. We disagree. The Settlement Agreement obligated the Preferred Parties to perform only those obligations expressly set forth in the Settlement Agreement. None of those obligations relate to the existence of ongoing mortgage indebtedness or the payment of any deficiencies. Instead, all of the mortgage debt and deficiencies were released. Although the Preferred Parties were obligated to take all actions necessary to finalize the foreclosure of the Florida Hotels, this obligation was based on the terms of the Settlement Agreement not on the existence of mortgage debt. Moreover, although Preferred Riverwalk was obligated to and did assign its right to the insurance proceeds under the terms of the Settlement Agreement, LaSalle had to abandon its argument that such an assignment gave it a right to the insurance proceeds because the policies prohibited such an assignment. Interpreting the unambiguous release to include a release of the mortgage debt does not render the exception to the release meaningless. The Preferred Parties were required to perform the obligations contained in the Settlement Agreement. None of these obligations, however, related to the ongoing existence of the mortgage debt. Instead, the mortgage debt was released. Because the mortgage debt, including any deficiencies, was released by the Settlement Agreement, LaSalle did

not have an interest in the Wausau insurance policies or their proceeds as a mortgagee.  *See Smith*, 82 S.W.3d at 585.

## CONCLUSION

Based on the foregoing, the trial court's judgment is affirmed.[1]

Catherine Stone, Chief Justice

---

[1] We need not further address whether a genuine issue of material fact was raised with regard to the applicability of the nonrecourse carve outs because the deficiency was released by the Settlement Agreement.