

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-13-00006-CV

**PEACOCK HOSPITALITY, INC.** d/b/a Holiday Inn Express-Burnet,
Appellant

v.

**ASSOCIATION CASUALTY INSURANCE COMPANY**,
Appellee

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2012-CI-20390
Honorable John D. Gabriel, Jr., Judge Presiding

Opinion by:  Catherine Stone, Chief Justice

Sitting:  Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  November 27, 2013

REVERSED AND REMANDED

This appeal arises from a lawsuit by Peacock Hospitality, Inc. d/b/a/ Holiday Inn Express-Burnet against Association Casualty Insurance Company relating to the alleged underpayment of an insurance claim for water damage to a hotel. The damage occurred after Peacock had defaulted on its loan to First National Bank Group, Inc. (the "Bank"). The claim was paid by Association Casualty after the Bank sent notice of foreclosure but prior to actual foreclosure. Peacock appeals the summary judgment granted in favor of Association Casualty. The crux of the argument on appeal is whether Association Casualty has the right to enforce a covenant in the Deed of Trust

between the Bank and Peacock, which divested Peacock of its rights in and to the insurance policy. We reverse the summary judgment because: (1) a genuine issue of material fact exists with regard to whether Peacock retained a right to sue Association Casualty for the underpayment of its claim under the terms of the insurance policy; and (2) Association Casualty has no right to enforce the covenant in the Deed of Trust.

## FACTUAL BACKGROUND

Sometime between July and December of 2009, Peacock defaulted on its monthly loan payment to the Bank. Peacock's loan from the Bank was secured by a first lien on the hotel under the terms of a Deed of Trust. On January 9, 2010, the hotel suffered water damage due to frozen pipes. On January 28, 2010, the Bank sent Peacock notice of acceleration and foreclosure.

On February 11, 2010, Association Casualty issued an insurance check for $33,323.11 based on its evaluation of the damage and the claim. The check was jointly payable to Peacock and the Bank. Peacock refused to endorse the check given its on-going negotiations with the Bank, and the check remained in the Bank's possession.

On February 25, 2010, a public adjuster retained by Peacock contacted Association Casualty asserting that a re-inspection was needed regarding the scope of the work necessary for the repairs to the hotel. Association Casualty's representative responded that the property had been inspected twice; however, Association Casualty would review any estimate the public adjuster submitted to determine if the amount paid for the claim should be adjusted. Although the public adjuster subsequently submitted his estimate, Association Casualty refused to re-inspect the water damage to the hotel or adjust the amount it paid on the claim.

On March 2, 2010, the Bank foreclosed on its lien and purchased the hotel at foreclosure. On May 21, 2010, the Bank sold the hotel to Mahadev LLC. Bipin Patel is the sole director and managing member of Mahadev. Pursuant to a request by the Bank, Association Casualty re-issued

the insurance check on October 12, 2010. The check was jointly payable to the Bank, Patel, and Peacock. Because Peacock's signature was forged on the check, Association Casualty rejected the endorsement and returned the check to the Bank. The Bank cashed the check and deposited the proceeds into an account at the Bank.

Peacock sued Association Casualty, the Bank, and Patel, alleging both tort and breach of contract claims. With regard to Association Casualty, Peacock alleged Association Casualty breached the insurance policy by failing to pay for the full loss to the property. Peacock asserted that the value of the full loss was $133,681.62, less its $1,000 deductible. Peacock also alleged a prompt payment claim and various tort claims.

Association Casualty moved for summary judgment asserting that the foreclosure divested Peacock of its rights in and to the insurance policy based on the following covenant in the Deed of Trust:

> In the event of a foreclosure of this Deed of Trust, the purchaser of the Mortgaged Property shall succeed to all the rights of Grantor, including any right to unearned premiums, in and to all policies of insurance assigned and delivered to Beneficiary pursuant to the provisions of this instrument.

Other covenants in the Deed of Trust required Peacock to insure the property and to assign and deliver all such polices of insurance to the Bank as collateral and further security for the payment of Peacock's debt to the Bank.

In its response to Association Casualty's motion, Peacock asserted that the anti-assignment clause in the insurance policy prohibited it from assigning its rights under the insurance policy to the Bank; therefore, Peacock retained those rights. Peacock also asserted that Association Casualty was not a party to the Deed of Trust and had no right to enforce the covenant that Association Casualty relied upon in its motion.

In its reply to Peacock's response, Association Casualty contended that it never alleged any assignment of the policy; instead, Association Casualty based its motion for summary judgment on the divestiture of Peacock's rights in and to the insurance policy under the Deed of Trust. In response to Peacock's contention that Association Casualty was not a third party beneficiary to the Deed of Trust and could not enforce its covenants, Association Casualty replied that it "is not, and has not, attempted to enforce" the covenant, arguing the covenant was cited only to demonstrate that the Bank "had the right to enforce the Deed of Trust against" Association Casualty, not Peacock.

The trial court granted summary judgment in favor of Association Casualty, and Peacock's claims against Association Casualty were severed from the remainder of the lawsuit, making the summary judgment final for purposes of this appeal.

### STANDARD OF REVIEW

We review a summary judgment *de novo*. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In reviewing the granting of a traditional summary judgment, we consider all the evidence in the light most favorable to the respondent, indulging all reasonable inferences in favor of the respondent, and determine whether the movant proved that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

### BREACH OF CONTRACT CLAIM

As previously noted, Association Casualty moved for summary judgment on the basis that the Deed of Trust contained a covenant that divested Peacock of all rights in and to the insurance policy upon foreclosure. Peacock countered that the provision still required it to assign its rights in the insurance policy to the Bank, which was prohibited by the anti-assignment clause. Peacock

further countered that Association Casualty was not a third party beneficiary of the Deed of Trust and could not enforce the covenant. Peacock raises these same arguments in its brief on appeal.

A. *Anti-Assignment Clause*

The anti-assignment clause in the insurance policy relied upon by Peacock is contained in section F of the Common Policy Conditions, and states as follows:

> Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

Peacock relies on cases in which courts have generally stated that non-assignment clauses in insurance policies are enforceable in Texas. *See, e.g., Tex. Farmers Ins. Co. v. Gerdes*, 880 S.W.2d 215, 218 (Tex. App.—Fort Worth 1994, writ denied); *Tex. Pac. Indem. Co. v. Atlantic Richfield Co.*, 846 S.W.2d 580, 583 (Tex. App.—Houston [14th Dist.] 1993, writ denied). In each of those cases, however, the insurance company sought to enforce the clause in defending against claims made by an assignee against the insurance company. *See Gerdes*, 880 S.W.2d at 217 (chiropractic clinic that provided services to insured based on assignment of insurance proceeds sought recovery against insurance company which had not consented to assignment and had paid insured); *Tex. Pac. Indem. Co.*, 846 S.W.2d at 581-82 (bankrupt company assigned insurance covering its employees' dishonesty to company defrauded by bankrupt company's employees and assignee then sued insurance company for loss resulting from fraud of bankrupt company employees); *cf. Cloughly v. NBC Bank-Seguin, N.A.*, 773 S.W.2d 652, 654-55 (Tex. App.—San Antonio 1989, writ denied) (assignee of payment under private annuity agreement sued manager of annuity seeking to enforce assignment of payment). Peacock cites no case to support its contention that an insured who assigns its rights under an insurance policy to a mortgagee can require the insurance company to pay the insured as opposed to the mortgagee. Peacock's contention is particularly questionable where the mortgagee is recognized as having an insurable interest under the express

terms of the insurance policy. Because we resolve this appeal on another ground, we do not further address this issue.

    *B.    Peacock's Post-Foreclosure Rights to Insurance Proceeds Independent of Deed of Trust*

Before addressing the issue of Association Casualty's ability to enforce the covenant in the Deed of Trust, we first consider whether Peacock retained a right to bring a cause of action against Association Casualty for breach of the insurance policy independent of the terms of the Deed of Trust. In resolving this preliminary issue, we must consider the effect of the foreclosure on Peacock's rights under the insurance policy.

In this case, Peacock's breach of contract claim was based on Association Casualty's failure to pay the entire value of a pre-foreclosure loss. Based on the allegations in the pleadings, Association Casualty underpaid the claim by $79,358.51 ($133,681.62 [Peacock's value of loss] - $1,000 [deductible] - $33,323.11 [amount Association Casualty paid]). In deciding whether Peacock has a claim for all or any part of this alleged underpayment, we must determine what rights an insured retains under an insurance policy in the event a foreclosure occurs after a covered loss.

Section F of the Building and Personal Property Coverage Form entitled "Additional Conditions" states that the conditions contained in section F "apply in addition to the Common Policy Conditions and the Commercial Property Conditions." Subsection 2 of Section F, which is entitled "Mortgageholders," contains a loss payable clause which states in pertinent part as follows:

> b.    We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interest may appear.

> c.     The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

The Bank is the only mortgageholder listed in the schedule included in the policy.

"The purpose of a loss-payable clause in an insurance policy is to protect the security interest of the mortgagee who has advanced money to others for the purchase of property, and who has taken a note and deed of trust, or mortgage on the subject property." *Smith v. Tex. Farmers Ins. Co.*, 82 S.W.3d 580, 584 (Tex. App.—San Antonio 2002, pet. denied); *see also Helmer v. Tex. Farmers Ins. Co.*, 632 S.W.2d 194, 196 (Tex. App.—Fort Worth 1982, no writ). "A mortgagee's [insurable] interest under an insurance policy containing a mortgagee loss-payable clause is limited to the indebtedness which the mortgagor owes under the note and [deed of trust]." *Smith*, 82 S.W.3d at 584; *see also Campagna v. Underwriters at Lloyd's London*, 549 S.W.2d 17, 19 (Tex. Civ. App.—Dallas 1977, writ ref'd n.r.e.). A foreclosure under a deed of trust has the effect of reducing the indebtedness owed by the mortgagor by the amount paid for the property at foreclosure. *Id*. at 19. If the foreclosure fully satisfies the mortgage debt or the mortgage debt is otherwise released as a result of the foreclosure, the mortgagee no longer has a right to any of the insurance proceeds paid for a pre-foreclosure loss. *See CWCaptial Asset Mgmt. LLC v. Wausau Bus. Ins. Co.*, No. 04-08-00457-CV, 2009 WL 1900413, at *4 (Tex. App.—San Antonio July 1, 2009, no pet.); *Helmer*, 632 S.W.2d at 196; *Campagna*, 549 S.W.2d at 18. If a deficiency remains following the foreclosure, however, the mortgagee retains a right, but only to the amount of the insurance proceeds necessary to satisfy the deficiency. *See Campagna*, 549 S.W.2d at 18; *see also CWCapital Asset Mgmt. LLC*, 2009 WL 1900413, at *4 (noting mortgage debt can exist after foreclosure in the form of a deficiency).

The question that arises, however, is what rights the mortgagor retains if a surplus exists after the extinguishment of the debt upon a foreclosure where the insurance proceeds have not

been applied to reduce the mortgage debt before the foreclosure. In such a case, the mortgagor is entitled to retain all of the insurance proceeds and to bring suit against the insurance company for any underpayment because the excess value of the property as it existed at the time of the loss is the property of the mortgagor. *See* 4 COUCH ON INS. § 65:17 (acknowledging mortgagor entitled to proceeds in excess of debt); *cf. Smith*, 82 S.W.3d at 582, 585-86 (holding insurance company properly issued checks for claims to insured after mortgage debt was extinguished, thereby extinguishing mortgagee's rights under the insurance policy). In this case, however, the summary judgment evidence fails to establish whether the foreclosure resulted in a deficiency or a surplus; therefore, a genuine issue of material fact exists with regard to whether Peacock retained a breach of contract claim against Association Casualty under the terms of the insurance policy independent of the Deed of Trust.

C.      *Association Casualty's Ability to Enforce the Deed of Trust*

Although Association Casualty argues in its brief that it is not attempting to enforce the covenant in the Deed of Trust, its entire argument regarding the divestiture of Peacock's rights hinges on the Deed of Trust provision. As previously explained, when only the terms of the insurance policy are considered in this context, Peacock potentially retains a breach of contract claim against Association Casualty for underpayment if the foreclosure resulted in a surplus or a deficiency which did not exceed the amount of the insurance proceeds and alleged underpayment. Therefore, Association Casualty must seek to enforce the terms of the Deed of Trust in order to divest Peacock of this claim.

Association Casualty does not argue in its brief that it is entitled to enforce the terms of the Deed of Trust, and we hold that it was not so entitled. A third party is entitled to enforce a contract only if the parties intend to "confer a direct benefit to [that] third party" and that intention is "clearly and fully spelled out" in the contract. *MCI Telecommunications Corp. v. Tex. Utils. Elec.*

*Co.*, 995 S.W.2d 647, 651 (Tex. 1999). Although the purchaser of the mortgaged property at foreclosure could potentially be a third party beneficiary of the covenant in question, the insurance company is clearly not. Accordingly, Association Casualty is not entitled to rely on the covenant in the Deed of Trust in defending against Peacock's breach of contract claim. Therefore, the trial court erred in granting summary judgment in favor of Association Casualty on Peacock's breach of contract claim. Because the summary judgment on Peacock's prompt payment claim and tort claims was based on the trial court's conclusion that Peacock was divested of its breach of contract claim, the summary judgment as to those claims also must be reversed.

## CONCLUSION

The trial court's summary judgment in favor of Association Casualty is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

Catherine Stone, Chief Justice