**BENEFICIAL STANDARD LIFE INSURANCE COMPANY,**
Appellant,

v.

**TRINITY NATIONAL BANK, et al., Appellee.**

No. 05–88–00147–CV.

Court of Appeals of Texas, Dallas.

Dec. 28, 1988.

were raised by the evidence or even legally sufficient. *TEX.R.APP.P. 90(a).*

Brian J. Hurst, Truman Spring, Dallas, for appellant.

Charles L. Perry, Renee H. Tobias, Dallas, for Trinity Nat. Bank.

James W. Litzler, Dallas, for Steven Vogds, Stephen Crawford & Roland Freeman.

Before WHITHAM, BAKER and KINKEADE, JJ.

## ON MOTION FOR REHEARING

WHITHAM, Justice.

On motion for rehearing, Beneficial Standard Life Insurance Company tells us that our disposition of its first three points of error as follows renders its fourth point of error moot. Therefore, to shorten this published opinion, we grant the motion for rehearing of appellant, Beneficial Standard Life Insurance Company, and withdraw our opinion of November 7, 1988. The following is now our opinion.

In this interpleader action, appellee, American Lloyds Insurance Company, brought suit to determine who was the appropriate payee of proceeds of an insurance policy. The second lienholder, Trinity National Bank and the owners, Ronald Freeman, Steven Vogds, and Stephen Crawford d/b/a the Terrace Green Apartments, appellees, filed a motion for summary judgment against the first lienholder, the appellant, Beneficial Standard Life Insurance Company. Beneficial Standard filed a motion for summary judgment against Trinity National and the owners. The trial court granted the former motion for summary judgment and denied Beneficial Standard's motion for summary judgment. In four points of error, Beneficial

Standard contends: (1) that the trial court erred in awarding the interpleaded funds to Trinity National and owners because Beneficial Standard, as first mortgagee, has an equitable lien on the insurance policy proceeds; (2) that the trial court erred in awarding the interpleaded funds to Trinity National and owners because Beneficial Standard's entitlement to the insurance policy proceeds is supported by the substitute trustee's deed; (3) that the trial court erred in taxing as costs against Beneficial Standard the interpleader's attorneys' fees; and (4) that the trial court erred in refusing to order the return of the interpleaded funds pending appeal. We disagree. Accordingly, we affirm.

On November 29, 1978, Bobby Joe Phillips Construction Company, Inc., executed and delivered to Beneficial Standard a promissory note in the amount of $300,000. The Phillips note was secured by a deed of trust, security agreement, and assignment of rents executed and delivered to Beneficial Standard. Phillips Construction's obligation to Beneficial Standard under the Phillips note was secured, through the deed of trust, by a certain tract of real property improved with apartment houses. The Phillips note and deed of trust were modified by an agreement dated April 12, 1982, between Beneficial Standard, Phillips Construction, and Stephen F. David, Jr. On May 1, 1985, Freeman, Vogds, and Crawford entered into an agreement with Beneficial Standard whereby Freeman, Vogds, and Crawford assumed Phillips Construction's obligations under the Phillips note and deed of trust, as modified by the April 12th modification agreement and further modified by a modification and assumption agreement. In connection with the execution of the May 1st modification and assumption agreement, Freeman, Vogds, and Crawford executed and delivered to Beneficial Standard a promissory note in the amount of $50,000. Pursuant to the terms of the May 1st modification and assumption agreement, the $50,000 note was also secured by a deed of trust lien upon the property securing the Phillips note. Under the May 1st modification and assumption agreement, Freeman, Vogds, and Crawford

also assumed the obligation to keep the security insured against fire and other physical damage "with loss made payable to Beneficiary." On May 15, 1985, Trinity National executed and delivered to Beneficial Standard a subordination agreement whereby Trinity National agreed that its second lien on the security would be subordinate to Beneficial Standard's first lien on the security arising out of the deed of trust as modified by the April 12th modification agreement and by the May 1st modification and assumption agreement executed by Freeman, Vogds, and Crawford.

Subsequently, Freeman, Vogds, and Crawford defaulted on their indebtedness to Beneficial Standard, and Beneficial Standard posted the security for foreclosure. On January 6, 1987, Beneficial Standard purchased the security at the trustee's sale for the amount of the unpaid indebtedness, $343,187.46. Thereafter, Beneficial Standard discovered that the security had been damaged by fire on January 1, 1987, and that Trinity National had been named as the loss payee in the policy. American Lloyds filed suit and interpleaded the proceeds of the policy, totaling $124,728.93. On December 29, 1987, the trial court rendered final judgment awarding the proceeds jointly to Trinity National, Freeman, Vogds, and Crawford and taxing American Lloyds' attorneys' fees as costs against Beneficial Standard. On January 4, 1988, the Dallas County District Clerk disbursed the interpleaded funds to Trinity National, Freeman, Vogds, and Crawford, and on January 28, 1988, Beneficial Standard filed a cost bond and supersedeas bond.

In its first point of error, Beneficial Standard contends that the trial court erred in awarding the interpleaded funds to Trinity National, Freeman, Vogds, and Crawford because Beneficial Standard, as mortgagee, had an equitable lien on the insurance policy proceeds. Beneficial Standard argues that when the owner of real property agrees to insure the property against damage for the benefit of the mortgagee, the mortgagee has an equitable lien on insurance proceeds arising from damage to the property even though the mortgagee is not

named in the policy. *See Wade v. Seeburg,* 688 S.W.2d 638, 639 (Tex.App.—Texarkana 1985, no writ). Therefore, Beneficial Standard asserts that it had a paramount equitable lien on the proceeds of the policy.

■■■ We agree that where a mortgagor is charged with the duty of obtaining insurance on property with loss payable to the mortgagee, but the policy does not contain such a provision, equity will treat the policy as having contained the loss payable provision and entitle the mortgagee to recover under the policy. *State Farm Fire & Casualty Co. v. Leasing Enterprises, Inc.,* 716 S.W.2d 553, 554 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). However, we do not agree with Beneficial Standard's contention that it is entitled to the proceeds of the policy. As previously stated, Beneficial Standard bid $343,187.46 for the security at foreclosure. This amount represents the amount of the debt under the mortgage. Thus, as a matter of law, since the indebtedness had been cancelled by the bid at the foreclosure, there is no liability to Beneficial Standard on the part of Freeman, Vogds, and Crawford. *See Helmer v. Texas Farmers Ins. Co.,* 632 S.W.2d 194, 196 (Tex.App.—Fort Worth 1982, no writ). As *Helmer* teaches:

> It must be remembered that the purpose of the loss payable clause to the mortgagee in an insurance policy such as the one here is to protect the security interest of one who has advanced money to others for the purchase of property, and who has taken, usually, a note and deed of trust, as in this case, or mortgage on the subject property. *The policy, in case of loss of or damage to the property, will pay to the extent of the mortagee's interest in the property whatever that amount is so that the mortgagee, who has advanced money on the property, will be protected.*

*Helmer,* 632 S.W.2d at 196 (emphasis added). Therefore, if the mortgage debt is satisfied by the proceeds of sale, the mortgagee, Beneficial Standard, is entitled to no further payment on account thereof. *See Fireman's Fund Ins. Co. v. Jackson Hill Marina, Inc.,* 704 S.W.2d 131, 136 (Tex.

App.—Tyler 1986, writ ref'd n.r.e.); *Helmer,* 632 S.W.2d at 196; *Campagna v. Underwriters at Lloyd's London,* 549 S.W.2d 17, 19 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.). Accordingly, we overrule Beneficial Standard's first point of error.

■■ In Beneficial Standard's second point of error, it argues that the trial court erred in awarding the interpleaded funds to Trinity National, Freeman, Vogds, and Crawford because Beneficial Standard's entitlement to the proceeds is supported by the reformed substitute trustee's deed. In order to understand Beneficial Standard's argument, we must first review facts relating to a companion lawsuit. Upon discovery of the fire damage to the security, Beneficial Standard filed suit to reform the original substitute trustee's deed to reflect that the consideration for Beneficial Standard's purchase of the security at foreclosure should have been $343,187.46, less insurance proceeds received as a result of the fire damage to the security. The premise for the reformation was that Beneficial Standard and the substitute trustee acted upon a mutual mistake that the security had not been damaged by fire. The only parties to the suit for reformation of the substitute trustee's deed were Beneficial Standard and the substitute trustee. Beneficial Standard asserts that the substitute trustee's deed by which Beneficial Standard purchased the security at the foreclosure sale, as judicially reformed, entitled Beneficial Standard to recover from the policy proceeds as much as the remaining indebtedness secured by the property, i.e., $343,187.46. *See Merrimack Mutual Fire Ins. Co. v. Allied Fairbanks Bank,* 678 S.W.2d 574, 577–78 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). We disagree.

■■■ We first note that *Merrimack* is distinguishable from the present case for two reasons. First, in *Merrimack,* the debtors, Smuts and McDowell, executed several notes with the bank. The notes were secured by a first lien on certain realty and improvements. When Smuts and McDowell defaulted, Smuts and McDowell sold one piece of realty to a third

party as part of a "workout agreement" with the bank. Subsequently, the third party defaulted on his note, and Smuts made an agreement with the bank that Smuts would purchase the property at foreclosure with money borrowed from the bank, refurbish the property for resale, and upon resale, apply the proceeds to the new note. Prior to foreclosure, a fire caused extensive damage to the house, and the foreclosure sale was conducted using the foreclosure documents drafted pursuant to the agreement between Smuts and the bank. The bank successfully filed suit for reformation based upon this prior agreement. Whereas in *Merrimack* both the debtors and the bank sued for reformation based upon a *prior agreement and mutual mistake,* no prior agreement regarding the amount of the bid existed in this instance. The underlying objective of reformation is to correct a mutual mistake made in *preparing* a written instrument, so that the instrument truly reflects the *original* agreement of the parties. *Cherokee Water Co. v. Forderhause,* 741 S.W.2d 377, 379 (Tex.1987). By implication, then, reformation requires two elements: (1) an original agreement and (2) a mutual mistake, made *after* the original agreement, in reducing the original agreement to writing. *Cherokee,* 741 S.W.2d at 379. However, it is not proper to change the provisions of a written instrument based on mutual mistake, absent a prior oral agreement between the parties. *See Continental Oil Co. v. Doornbos,* 402 S.W.2d 879, 883 (Tex.1966).

A second distinction to be made between *Merrimack* and the present case is that while the suit for reformation in *Merrimack* was between the debtors and the bank, here the suit for reformation was between the bank and the substitute trustee. *Merrimack,* 678 S.W.2d at 576–77. Neither Trinity National, nor the debtors, Freeman, Vogds, and Crawford, were made parties to the reformation lawsuit. In Texas, a judgment is not binding upon those who were not parties thereto or who are not holding in privity thereto. *Kirby Lumber Corp. v. Southern Lumber Co.,* 145 Tex. 151, 196 S.W.2d 387, 389 (1946). In an action for reformation, all parties to the contract or instrument whose interests may

be affected (diminished or enlarged) by a judgment are necessary parties. *Le Cuno Oil Co. v. Smith,* 306 S.W.2d 190, 195 (Tex.Civ.App.—Texarkana 1957, writ ref'd n.r.e.), *cert. denied,* 356 U.S. 974, 78 S.Ct. 1137, 2 L.Ed.2d 1147 (1958). It is apparent from the record that Trinity National, Freeman, Vogds, and Crawford were not parties to the reformation suit; therefore, we decline to hold that the trial court improperly refused to award the interpleaded funds to Beneficial Standard, and we overrule Beneficial Standard's second point of error.

In its third point of error, Beneficial Standard asserts that the trial court erred in taxing American Lloyds' attorneys' fees as costs against Beneficial Standard. Beneficial Standard maintains that the trial court's decision was an abuse of discretion because Beneficial Standard's equitable lien claim to the policy proceeds is in good faith. We disagree. In Texas, the innocent stakeholder in an interpleader is entitled to attorneys' fees to be paid out of the impleaded fund; however, the ultimate burden between rival claimants should fall on the party whose unsuccessful claim rendered the interpleader necessary. *See Foreman v. Graham,* 693 S.W.2d 774, 778 (Tex.App.—Fort Worth 1985, writ ref'd n.r. e.); *Monarch Tile Sales v. Frost Nat'l Bank,* 496 S.W.2d 254, 255–56 (Tex.Civ. App.—San Antonio 1973, no writ); *Givens v. Girard Life Ins. Co.,* 480 S.W.2d 421, 430 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r.e.) (opinion on motion for rehearing). Thus, the interpleader's attorneys' fees may be taxed against the losing party as costs, rather than paying the interpleader's attorneys' fees out of the impleaded funds. *See Givens,* 480 S.W.2d at 429. The trial court's decision to tax attorneys' fees as costs against the losing party will not be disturbed on appeal absent a showing of an abuse of discretion. *See Bentley v. Grewing,* 613 S.W.2d 49, 52 (Tex.Civ.App.—Fort Worth 1981, writ ref'd n.r.e.). Because Beneficial Standard was the unsuccessful claimant, the burden of paying the interpleader's attorneys' fees as costs falls upon Beneficial Standard, whose contentions rendered the interpleader necessary. *See Bentley,* 613 S.W.2d at 52. Consequently,

we hold that the trial court did not abuse its discretion in taxing the interpleader's attorneys' fees against Beneficial Standard as costs. Accordingly, we overrule Beneficial Standard's third point of error.

In its fourth and final point of error, Beneficial Standard contends that the trial court erred in refusing to order the return of the interpleaded funds pending appeal. Beneficial Standard argues that the trial court has continuing jurisdiction over the interpleaded funds and, by use of its equitable powers, may issue whatever orders are necessary to protect the fund. *See Northshore Bank v. Commercial Credit Corp.*, 668 S.W.2d 787, 790 (Tex.App.— Houston [14th Dist.] 1984, writ ref'd n.r.e.). Beneficial Standard further asserts that such continuing jurisdiction is directly related to the trial court's supervision of the "type of security required to continue the suspension of the execution of the judgment," and such supervision continues "during the pendency of an appeal from a judgment, *even after the expiration of its plenary power.*" TEX.R.APP.P. 47(k) (emphasis added). In addition, Beneficial Standard contends that because a judgment becomes final only after the expiration of thirty days from the date the judgment is signed, execution may not issue on a judgment until after thirty days has expired and the judgment becomes final. TEX.R. CIV.P. 627. Thus, Beneficial Standard concludes that the release of the interpleaded funds before the expiration of thirty days from the signing of the judgment was unlawful.

In its motion for rehearing, Beneficial Standard tells us that because of our disposition of its first three points of error (repeated word for word in this opinion on rehearing), this fourth point of error "is rendered moot." We agree. Thus, we conclude that we need not address Beneficial Standard's fourth point of error, but merely overrule it. We overrule Beneficial Standard's fourth point of error.

AFFIRMED.