**Efren AVILA, Appellant,**

v.

**LONE STAR RADIOLOGY, Bob Kubicki, Dr. Kenneth Lustik, Family Care Pharmacy, Derrick Ford, and Karen Powell, Appellees.**

**No. 10–04–00021–CV.**

Court of Appeals of Texas, Waco.

Dec. 14, 2005.

---

Domingo A. Garcia, Dallas, for appellant.

John A. Stephens, Fulbright, Winnford & Marable, Waco, for appellees.

Lone Star Radiology & Dr. Tamara Uptigrove, Dallas, pro se.

Bob Kubicki, Dallas, pro se.

Dr. Kenneth Lustik, Open Air MRI, Dallas, pro se.

Family Care Pharmacy, Plano, pro se.

Derrick Ford, Dallas, pro se.

Karen Powell, Plano, pro se.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## CORRECTED OPINION

FELIPE REYNA, Justice.

Avila appeals from a judgment in an interpleader action claiming that the trial

court abused its discretion by failing to award him attorney's fees. We reverse.

## Background

Alfredo Saldana and Efren Avila were driving back from work in a tractor when a pick-up truck struck them from behind. The truck, owned by Andy Christopher, was driven by Daniel Alan Christopher. Avila and Saldana suffered multiple injuries and filed suit against Andy, Daniel, and B.G. Williams d/b/a Williams Asphalt, Saldana's employer. Andy and Daniel offered to settle with Avila for their policy limit, $20,000. Avila agreed, but his medical bills totaled over $70,000. Avila negotiated with his medical creditors and offered them a pro-rata share of the settlement less attorney's fees. The medical creditors refused. Subsequently, Avila filed an interpleader action, and the trial court divided the settlement among the providers, but did not award Avila attorney's fees from the settlement funds. The trial court severed this cause from the remainder of the issues in the case, and Avila appealed.

## Attorney's Fees in an Interpleader Action

Avila argues in his sole issue that the trial court abused its discretion in failing to award him attorney's fees.

An interpleader action permits an innocent stakeholder facing rival claims to allow the courts to decide who is entitled to the fund and thus avoid the peril of acting as judge and jury itself. *Union Gas Corp. v. Gisler*, 129 S.W.3d 145, 153 (Tex.App.-Corpus Christi 2003, pet. denied); *Olmos v. Pecan Grove Mun. Utility Dist.*, 857 S.W.2d 734, 741 (Tex.App.-Houston [14th Dist.] 1993, no pet.). The elements of an interpleader action are: (1) the party is either subject to, or has reasonable grounds to anticipate, rival claims to the same fund or property; (2) the party has not unreasonably delayed filing an action for interpleader; and (3) the party has unconditionally tendered the fund or property into the court's registry. *Hanzel v. Herring*, 80 S.W.3d 167, 173 (Tex.App.-Fort Worth 2002, no pet.) (citing *Bryant v. United Shortline Inc.*, 984 S.W.2d 292, 296 (Tex.App.-Fort Worth), *aff'd*, 972 S.W.2d 26 (Tex.1998)). "The interpleader asks only that he be released and discharged from any liability on account of the proceeds, that he recover his attorney's fees for bringing the interpleader, and that he be paid his fees and costs out of the proceeds." *Id.* However, the award of attorney fees is within the sound discretion of the trial court. *Olmos*, 857 S.W.2d at 741; *Beneficial Standard Life Ins. Co. v. Trinity Nat'l Bank*, 763 S.W.2d 52, 56 (Tex.App.-Dallas 1988, writ denied).

Several creditors claimed an interest in Avila's settlement. There is no evidence that Avila delayed in bringing the interpleader action once it became clear that the matter could not be resolved. Further, Avila tendered the settlement amount to the trial court. Therefore, as an innocent stakeholder, Avila is entitled to recover attorney fees under Texas interpleader law. *United States v. Ray Thomas Gravel Co.*, 380 S.W.2d 576, 581 (Tex. 1964) (holding that in Texas an innocent stakeholder is entitled to attorney's fees); *Heggy v. American Trading Employee Retirement Account Plan*, 110 S.W.3d 692, 703 (Tex.App.-Houston [14th Dist.] 2003, pet denied); *Olmos*, 857 S.W.2d at 741. Therefore, we find that the trial court abused its discretion in failing to award Avila reasonable attorney's fees for bring the interpleader action. Accordingly, we sustain Avila's sole issue.

## Conclusion

We reverse and remand this cause to the trial court for further proceedings consistent with this opinion.

Chief Justice GRAY dissenting.

TOM GRAY, Chief Justice, dissenting.

Unfortunately, I do not see any chance of getting to the right result in this case on further review. Who is going to appeal? Who can? Where is there sufficient economic incentive to make it right? Maybe the representatives of the medical creditors would prefer not to be named as appellees or judgment creditors enough that they will pursue it. While the dollar amount is small, the implications are enormous. The majority has made persons and entities parties to this appeal because they were identified in a brief, and some did not even receive a copy of that brief.

## OVERVIEW

The original opinion issued on June 29, 2005. No motion for rehearing was filed. Thus, our plenary jurisdiction ended 60 days thereafter on August 28, 2005. TEX. R.APP. P. 19.1(a). The mandate issued on October 21, 2005. Any jurisdiction we had to modify the opinion or the judgment, other than for a purely clerical error, has long since passed. TEX.R.APP. P. 19.3. So the operative question is whether purporting to add some parties on appeal, long after the appeal was in progress, and now changing the assessment of cost to those "parties" is a purely clerical error that we can correct. TEX.R.APP. P. 19.3(a). I do not believe it to be a purely clerical error, and thus, I dissent.

## BACKGROUND

The majority memorandum opinion and my dissenting opinion in this case were issued on June 29, 2005. *Avila v. Christopher*, No. 10–04–00021–CV, 2005 Tex.App. LEXIS 5038, 2005 WL 1531170 (Tex.App.-Waco June 29, 2005, no pet.). At that time, the full style of the case was: *Efren*

*Avila v. Andy Christopher, Daniel Alan Christopher and B.G. Williams d/b/a Williams Asphalt.*[1] There was no motion for rehearing filed. There was no petition for review filed. The mandate issued in the usual course of proceeding. TEX. R.APP. P. 18.1. Then, seven days after the mandate was issued, we received a letter from counsel for the Christophers. The letter copied only Avila's attorney.

## WHO ARE PROPER LY PARTIES TO THIS APPEAL?

In the letter, counsel asserted that his clients were released by Avila and dismissed from the underlying case "well before Avila appealed." The letter indicates a common misconception—that once dismissed from a case, the party is no longer subject to the possibility of being impacted by subsequent events that occur in the case or of being a party to a subsequent appeal. When a party has settled a claim and secured an order of dismissal, until that dismissal order is final, the party is just that, a party to the case, and must be served with all documents pursuant to Texas Rule of Civil Procedure 21 and, if the entity remains a party on appeal, Texas Rule of Appellate Procedure 9.5. If the case is proceeding against other parties, the only way to avoid continuing involvement, cost, and risk in the case is to secure a severance so that the order dismissing the party can be made a final judgment as to the dismissed party.

It appears that the Christophers may also have been operating under the mistaken belief that they were not parties to the severed case in the trial court. The letter seems to imply that it was only the interpleader action that was severed. This

---

1. The case style has been changed by the majority so I must use their style to make sure the opinions are issued and kept together.

But, for a number of reasons that will become apparent in this dissenting opinion, I think this change is in error.

is, however, contrary to the severance order. The severance order "severs Efren Avila's claim against Andy Christopher and Daniel A. Christopher and the interpleader action from the rest of the suit." The documents ordered to be included in the severed action include all the pleadings and answers in which the Christophers were involved. There can be no question that the Christophers were parties in the severed case.

The next question then is whether the Christophers were parties in the appeal. The original notice of appeal did not specify the "parties" against whom relief would be sought, nor did the amended notice of appeal. A notice of appeal invokes our jurisdiction of an appeal over all the "parties to the trial court's judgment or order appealed from." TEX.R.APP. P. 25.1(b). A notice of appeal, however, does not invoke our jurisdiction over persons who were not parties in the trial court. According to the certificate of service, counsel for the Christophers was served with both notices of appeal, the original and amended. The style also continued to be in their names. Thus, based upon this record, it appears the Christophers were intended to be and are parties to the appeal.

Any doubt about whether this Court considered the Christophers as parties to this appeal should have been resolved when the Court acknowledged receipt of the notice of appeal and notified the attorneys of the appellate cause number and style of the appeal as follows:

Re: Court of Appeals Number: 10–04–00021–CV

Trial Court Case Number: 03–00–12821–CV

Style: Efren Avila

v.

Andy Christopher, Daniel Alan Christopher and B.G. Williams d/b/a Williams Asphalt

This notice was sent *only* to counsel for Avila and counsel for the Christophers. No one else received this notice from the Court. Neither Avila nor the Christophers complained about the absence of notice being sent to the litany of medical creditors. Neither party complained about the style of the appeal. The parties and this Court proceeded with the appeal as follows:

1. Noticed the parties that the clerk's record had not been filed, because it had apparently not been paid for.

2. Noticed the parties of the deficiencies in the record. It did not contain specified documents. Included in the list of missing documents were plaintiff's petition, defendants' answers, summary judgment pleadings, and summary judgment.

3. Noticed the parties the clerk's record was filed.

4. Noticed the parties the reporter's record had not been filed.

5. Noticed the parties, again, that the reporter's record had not been filed.

6. Noticed the parties that the reporter's record was filed.

7. Noticed the parties of the receipt of a defective brief from appellant.

In the above litany, "parties" is in reference to only Avila's and the Christophers' counsel receiving notice. None of the medical creditors received any of these notices. As far as this Court was concerned, they were not parties to this appeal.

At this juncture, it is appropriate to note that normally the docketing statement would have provided the necessary information to determine who Avila intended to be appellees. A docketing statement was never filed. And the Court failed to follow up on its demand sent to Avila that one be

filed. Justice Vance has characterized the docketing statement as only having administrative purposes. *Hensley v. W.M. Specialty Mortgage LLC,* No. 10–05–00332–CV, 2005 WL 3073000, 2005 Tex.App. LEXIS 9614 (Tex.App.-Waco Nov. 16, 2005, no pet. h.)(Vance, J., concurring note). I disagree. Determining who is a party to an appeal is substantive. We have used the docketing statement in the past to determine who was, or was not, intended as a party to an appeal. *Polys v. Daney,* No. 10–98–00285–CV (Tex.App.-Waco Nov. 25, 1998, no pet.)(not designated for publication). The docketing statement provides substantive information about who the appeal is being pursued by and against. It can provide outcome determinative information. That is substantive—not administrative.

Finally, over six months after the amended notice of appeal was filed, when the amended brief was filed, it appeared that maybe someone else needed to be notified of something because the style on the brief was as follows:

Efren Avila,

Appellant,

v.

Lone Star Radiology, Accident & Injury, Open

Air MRI, Family Care Pharmacy, Parkland

Hospital, and Pedro Nosnik, M.D.,

Appellees

But the certificate of service indicates that it was served only on "representatives" of Parkland Hospital, Dr. Nosnik, and Accident & Injury. This means Lone Star Radiology, Open Air MRI, and Family Care Pharmacy were not served with the brief and it was not possible to determine from the brief if the persons served were attorneys. The list of "Parties and Counsel" did not identify the Christophers. *See* Tex.R.App. P. 38.1(a). But other errors in the listing of "Parties and Counsel" were readily apparent. Dr. Tamara Uptigrove was identified as *counsel* for Lone Star Radiology. Dr. Kenneth Lustik was identified as *counsel* for Open Air MRI. No counsel or representative was identified for Family Care Pharmacy, and Derrick Ford was identified as counsel for Parkland Hospital. But, in apparent response to this listing and identification of "appellees," the Court simply "added" the following persons to our case management system on June 15, 2004, all as appellees:

Derrick Ford—Pro Se

Bob Kubicki—Pro Se

Lone Star Radiology

Dr. Kenneth Lustik—Pro Se

Family Care Pharmacy—Pro Se

Karen Powell—Pro Se

Dr. Tamara Uptigrove—Pro Se

The source of this information for these "new" appellees appears to be solely from the style and the obviously defective "identity of the Parties and Counsel" in appellant's corrected brief.

## LET THE GAMES BEGIN

So without any prior involvement in the appeal, on June 24, 2004 we notified the "new" appellees and representatives that their brief had been due on June 7, 2004 and neither a brief nor a motion to extend had been filed. I am not surprised that no brief was filed by persons, entities, or representatives that had no idea that an appeal was proceeding without them. Until June 24, 2004, they had no reason to know they were parties in a case, much less that they were appellees in an appeal.

The clerk received a phone call. The phone call was followed by a letter. The full text of the letter follows:

Dear Ms. Roessler:

As we discussed following my receipt of your June 24, 2004 letter regarding the above-referenced matter, I have no record of this matter except for correspondence from Mr. Garcia's office. That lack of documentation leads me to believe that I made no appearance at the trial court. Furthermore, had I made such an appearance, I would have also made an appearance on behalf of Lone Star Radiology and Open Air MRI.

In any event, as we discussed and in light of the above, I represent to the court that Appellees Accident & Injury, Lone Star Radiology, and Open Air MRI will not be submitting briefs in this matter.

By copy of this letter all counsel of record are being served.

Very truly yours,

Robert Kubicki,

General Counsel

As an aside: Can a person make an appearance in an appellate court by having a representative graciously respond to a clerk's notice that a brief is late when there was no prior involvement in the appeal by the person?

The Court thereafter notified everybody listed in our case management system, including the Christophers, that the case would be submitted without oral argument. An opinion, a dissenting opinion, and judgment were issued. Nothing was said by anyone. No motion for rehearing. No petition for review.

The mandate issued.

Seven days after the mandate issued, counsel for the Christophers responded by letter that they were not parties to the appeal and, therefore, costs should not be assessed against them in the judgment. The only person or entity provided a copy of the letter, other than the Court, was Avila's counsel. So the medical creditors were not copied or served with the document and thus have no idea this could be coming. They have not been asked to address any of these issues; nobody has.

They should not have to because they are not parties to this appeal.

So under the guise of a clerical error, we are now revising the "style" of the appeal and rendering a judgment assessing appellate costs against persons who had no notice until the eleventh hour that they were allegedly parties to an appeal involving their rights. The final judgment rendered by a majority of this Court did not assess costs against them. But surprise, now you are not only parties to an appeal that you never had a legitimate way to participate in, but you lost and now you owe for costs! Welcome to the Tenth Court of Appeals— so glad we could be of service to you.

## ONE STEP BACK

Before anyone accepts this as an appropriate fix, let us all take one step back. Is this actually a clerical error that we can "fix" by withdrawing an opinion and judgment and recalling a mandate? I think not.

## CLERICAL VS. JUDICIAL ERRORS

Most of the cases about correcting clerical errors arise from modification of trial court judgments. In this regard, the following discussion is typical.

A clerical error is a discrepancy between the entry of a judgment in the record and the judgment that was actually rendered. *See Andrews v. Koch*, 702 S.W.2d 584, 585 (Tex.1986); *Butler v. Cont'l Airlines, Inc.*, 31 S.W.3d 642, 647 (Tex.App.-Houston [1st Dist.] 2000,

pet. denied). A clerical error does not result from judicial reasoning, evidence or determination. *Andrews,* 702 S.W.2d at 585. Conversely, a judicial error arises from a mistake of law or fact that requires judicial reasoning to correct. *Butler,* 31 S.W.3d at 647. A judicial error occurs in the rendering, rather than the entering of the judgment. *Escobar,* 711 S.W.2d at 231.

A trial court can only correct nunc pro tunc the entry of a final written judgment that incorrectly states the judgment actually rendered. *Id.* at 231–32. Even if the trial court incorrectly renders judgment, the trial court cannot alter a written judgment that precisely reflects the incorrect rendition. *Id.* at 232. If the trial court corrects a judicial error after its plenary power has expired, the judgment is void. *Dikeman v. Snell,* 490 S.W.2d 183, 186 (Tex.1973). When deciding whether an error in a judgment is clerical or judicial, the court must look to the judgment actually rendered and not the judgment that should have been rendered. *Escobar,* 711 S.W.2d at 231. Whether an error is judicial or clerical is a question of law. *Id.*

It is well settled that the rendition of a judgment occurs when the trial court's decision is officially announced either by a signed memorandum filed with the clerk of the court or orally in open court. *In re Fuselier,* 56 S.W.3d 265, 268 (Tex. App.-Houston [1st Dist.] 2001, orig. proceeding). Here, neither party disputes that the trial court's August 2002 letter was the trial court's rendering of judgment.

In order for a judgment nunc pro tunc to be properly granted, the evidence must be clear and convincing that a clerical error was made. *Riner v. Briargrove Park Prop. Owners, Inc.,* 976 S.W.2d 680, 683 (Tex.App.-Houston [1st Dist.] 1997, no writ); *see Broussard,* 112 S.W.3d at 833. Evidence may be from oral testimony of witnesses, written documents, previous judgments, docket entries, or the trial judge's personal recollection. *Riner,* 976 S.W.2d at 683. If the trial court relies on its own personal recollection of the facts, we presume that the court's recollection supports the finding of clerical error. *Id.*

*Barton v. Gillespie,* 178 S.W.3d 121, 126–27 (Tex.App.-Houston [1st Dist.] 2005, no pet.).

And another example:

Once a trial court loses plenary power over a judgment, it can correct clerical, but not judicial, errors by judgment nunc pro tunc. *Escobar v. Escobar,* 711 S.W.2d 230, 231 (Tex.1986); *see also* Tex.R. Civ. P. 316. A clerical error is an error in the entry of a judgment; it is a mistake or omission that prevents the judgment as entered from accurately reflecting the judgment that was rendered. *Escobar,* 711 S.W.2d at 231; *Univ. Underwriters Ins. Co. v. Ferguson,* 471 S.W.2d 28, 29–30 (Tex.1971); *Butler v. Cont'l Airlines, Inc.,* 31 S.W.3d 642, 647 (Tex.App.-Houston [1st Dist.] 2000, pet. denied). In contrast, a judicial error arises from a mistake of law or fact that results from judicial reasoning or determination. *Andrews v. Koch,* 702 S.W.2d 584, 585 (Tex.1986); *LaGoye v. Victoria Wood Condo. Ass'n.,* 112 S.W.3d 777, 783 (Tex.App.-Houston [14th Dist.] 2003, no pet.). A judicial error occurs in the rendition, as opposed to the entry, of a judgment. *Escobar,* 711 S.W.2d at 231.

Whether the trial court previously rendered judgment and the content of the judgment are fact questions for the trial court, but whether an error in the judgment is judicial or clerical is a ques-

tion of law. *Id.* at 232; *Butler,* 31 S.W.3d at 647. Where, as here, no findings of fact or conclusions of law were filed, the trial court's judgment implies all findings of fact necessary to support it. *Pharo v. Chambers County,* 922 S.W.2d 945, 948 (Tex.1996). Because a record was made of the nunc pro tunc hearing, however, these implied findings are not conclusive, and Wittau may challenge them by raising both legal and factual sufficiency of the evidence issues. *Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex.1989). We review the trial court's implied factual determinations under traditional legal and factual sufficiency standards, but are not bound by the trial court's legal determination regarding the nature of any error in the original judgment. *Roberson,* 768 S.W.2d at 281; *Escobar,* 711 S.W.2d at 232; *Finlay v. Jones,* 435 S.W.2d 136, 138 (Tex.1968) (orig.proceeding).

*Wittau v. Storie,* 145 S.W.3d 732, 735–736 (Tex.App.-Fort Worth 2004, no pet.).

And one of the better summaries of how to distinguish clerical from judicial error is the following excerpt.

A clerical error results from inaccurately recording the decision of the court. *Escobar v. Escobar,* 711 S.W.2d 230, 231 (Tex.1986); *Dickens,* 957 S.W.2d at 659. To be clerical in nature, the error must be one that is not the result of judicial reasoning, evidence, or determination. *Andrews v. Koch,* 702 S.W.2d 584, 585 (Tex.1986); *Gutierrez v. Gutierrez,* 86 S.W.3d 721, 726 (Tex.App.-El Paso 2002, no pet.). Correction of a clerical error does not effect a substantive change in the court's order. *Dickens,* 957 S.W.2d at 659. On the other hand, a judicial error results from judicial reasoning or determination. *Id.* Substantive change results from correction of a judicial error. For instance, an

attempt to impose a specific obligation to pay where no such obligation had previously existed is an unlawful substantive change, not a mere clarification or correction of a clerical error. *McGehee v. Epley,* 661 S.W.2d 924, 925–26 (Tex.1983); *In re Broussard,* 112 S.W.3d 827, 833–34 (Tex.App.-Houston [14th Dist.] 2003, orig. proceeding).

The salient distinction between "clerical" and "judicial" errors lies in the exercise of the judgmental offices of the court. *Andrews,* 702 S.W.2d at 585. In *Andrews,* a probate court order allowed a sale of estate property in accordance with a real estate sales contract, which included a grant of an easement. *Id.* The recorded deed failed to mention the easement, however. *Id.* The administrators obtained from the probate court an order nunc pro tunc correcting the deed to reflect the conveyance of the easement. *Id.* After the court of appeals reversed the probate court's decision, the Texas Supreme Court determined the correction was proper and affirmed the probate Court's correction. *Id.* at 586. The court reasoned, since the entry of the order nunc pro tunc would not involve additional judicial reasoning, the error at issue was clerical in nature and the probate court could correct the deed to properly reflect the judgment originally rendered. *Id.*

To further illustrate the well-established rules regarding what qualifies as a judicial error, we look to the 1891 case of *Missouri Pac. Ry. Co. v. Haynes,* in which respondents sued the railway company for the value of eighty-seven bales of cotton, weighing 43,064 pounds, destroyed by fire negligently caused by the company while the cotton was in its possession. 82 Tex. 448, 18 S.W. 605 (1891). There was no controversy over the number of bales or their weight, and at the trial the railway company did not

deny that eighty-seven bales were burned. *Id.* However, in its calculation of the gross weight of the cotton destroyed, the trial court omitted the bill of lading for six bales of cotton. *Id.* Nearly six months after judgment was rendered, respondents moved the trial court to correct the judgment to include the value of the six bales. *Id.* The trial judge testified that he found for respondents the weight of the entire eighty-seven bales, that he intended to give judgment for that amount, and that he thought he had done so until the motion to correct the judgment was filed. *Id.* The trial court granted the motion. *Id.* The Texas Supreme Court disagreed, concluding that respondents' remedy, if any, would have been by a timely motion for new trial or by appeal rather than a motion to reform a final judgment. *Id.* The failure of the court to consider and compute the value of the six bales of cotton was a judicial error, not a clerical error. It was a failure to consider evidence in the case and represented an erroneous judgment on the facts. *Id.*

Similar determinations can be found in cases involving child support orders and modifications. For instance, when, after its plenary power expired, the trial court entered a judgment that ordered a father to pay $38.00 per month in reimbursement of his child's healthcare insurance premiums and the original judgment did not impose such an obligation, the corrected judgment was ineffective as a judgment nunc pro tunc and was void. *Broussard,* 112 S.W.3d at 833–34. The attempted correction did not involve a mere clerical error since it imposed an obligation where previously there had been none. *Id.*

*In re Marriage of Ward,* 137 S.W.3d 910, 913–914 (Tex.App.-Texarkana 2004, no pet.).

When this reasoning is applied to this appellate case, the error the majority is trying to correct is judicial, not clerical. The corrected judgment imposes court costs on entirely different entities than was imposed by the original judgment. The original judgment was not the result of a clerical error. Thus, the "Corrected Opinion" and judgment are void.

And for the majority to argue that they did not intend the judgment to be entered against the Christophers and Williams does not yield a flattering picture of the conduct of their offices. In the original dissenting opinion, I directed the readers' attention to:

1.  the discrepancy between the style of the case on the opinion and the style used on appellant's brief;
2.  the fact the medical creditors had never been served in the case below;
3.  the only judgment to review among the parties to the case below was the settlement/dismissal with the defendants below; and
4.  "the only thing that is clear is that B.G. Williams is NOT a party to this appeal. This appeal is from the claims of Avila against Andy and Daniel Christopher which were severed and settled. The only notice of appeal in the record [actually both notices of appeal] gives the original style of the case ..."

*Avila v. Christopher,* No. 10–04–00021–CV, 2005 WL 1531170, 2005 Tex.App. LEXIS 5038, *5–11 (Tex.App.-Waco June 29, 2005, no pet.)(Gray, C.J., dissenting).

In the face of these comments in the dissenting opinion, the majority issued an opinion identifying the Christophers and Williams as the appellees and a judgment awarding costs against those appellees. Now they say the original opinion and judgment were the result of a clerical error.

So what else could all this mean? Of course it could mean the majority read the dissent, but were consciously indifferent to the problems it identified. The only other alternative is that the majority consciously chose not to read the dissenting opinion. Under either of these scenarios, the erroneous judgment cannot be anything other than a judicial error. They either intended the result originally rendered, willfully and consciously chose not to correct it when their attention was directed to this problem by the dissenting opinion, or willfully and consciously failed to read the original dissenting opinion.

### LET'S START OVER

The discussion of this original case on appeal could have been addressed very simply. The appellant failed to establish a number of the elements to show himself entitled to attorney's fees for bringing an interpleader action. He unreasonably delayed bringing the interpleader while trying to negotiate a settlement. He failed to establish himself as an innocent stakeholder by seeking 66.66% of the interpleaded funds for himself and as an attorney fee from the fund.

During negotiations with the medical creditors Avila graphically demonstrated the delay in tendering the funds was unreasonable and that Avila was not an "innocent" stakeholder. This is the settlement Avila proposed:

Defendant's insurance has [sic] the maximum policy limits of $20,000.00, which this has settled for that amount. This is the maximum we can obtain from the defendant's insurance. *This settlement amount must be divided 1/3 to the client, 1/3 to the attorney, and 1/3 to all the medical providers,* [sic] *Please keep in mind and consider the fact that if the medicals do not decrease, we may be forced to file a motion of interpleader and have the court decide how much you will get.* Please keep in mind that this amount ($6,666.66) must cover ALL his outstanding medical bills.

Appendix to Appellant's Brief, tab K.

The outrageousness may not be immediately apparent unless you also know the total medicals he was trying to settle for $6,666 was $72,468, AND that there is another suit pending, the severed suit against Williams, in which the extent of his medical injuries and medical expenses will be used to maximize the recovery. Under Avila's settlement proposal, the medical creditors' lien on the recovery in that suit would be extinguished.

Further, Avila had not tendered the funds into the court, which is an element of an interpleader action, holding them instead in the attorney's trust account. Avila held onto the funds so long he was ordered to pay the funds into the court and it is not clear on the record before us that he ever did.

And, finally, Avila only presented evidence of his efforts to secure the settlement and efforts to obtain the part (66.66%) Avila claimed he and his attorney were entitled to out of the fund. He presented no evidence of the fees and expenses incurred to bring the interpleader and, under his theory on appeal, that is all he might have been entitled to obtain. And on remand, that will be all that Avila is entitled to under the majority's opinion and judgment: the fees necessary for bringing this interpleader action—not the fees necessary to obtain the settlement fund. And whatever amounts are allocated to the medical creditors on remand, it should be made clear that this is an allocation of proceeds of a partial settlement fund and *does not* extinguish the entirety of their medical creditor lien as Avila was demanding in his settlement proposal.

CONCLUSION

So I conclude where my earlier dissenting opinion began:

There is simply no pleasant way to say this. This case and its appeal have been botched beyond repair, and it is not this Court's job to fix it.

Now the majority's two efforts to "fix" the case for Avila have become part of the problem. This dissenting opinion as well as my original dissenting opinion address why the majority is wrong on the merits of this appeal. This dissenting opinion also addresses why the corrected opinion and judgment are void. I dissent.