

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-15-00676-CV

Jose **GEORGE**, Matilde George, and Elaine George,
Appellants

v.

**COMPASS BANK**,
Appellee

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2014-CI-03773
Honorable Dick Alcala, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Karen Angelini, Justice
Marialyn Barnard, Justice
Rebeca C. Martinez, Justice

Delivered and Filed:  December 7, 2016

AFFIRMED

Appellant's motion for rehearing is denied.  This court's opinion and judgment dated September 14, 2016 are withdrawn, and this opinion and judgment are substituted.

Jose George, Matilde George, and Elaine George (the "Georges") appeal the trial court's orders granting Compass Bank's motion to approve interpleader and motion for summary judgment.  The Georges contend no evidence supported the granting of the interpleader, and the trial court erred in awarding attorney's fees.  In addition to briefing the merits of their issues, the

Georges also respond to Compass Bank's motion to dismiss this appeal for lack of jurisdiction. The motion was carried with the appeal. We affirm the trial court's orders.

## BACKGROUND

Jose George deposited funds into accounts in his son's name at Citibank, N.A. and Compass Bank. Jose subsequently sued his son, Jose Alberto George ("Alberto"), Alberto's wife, and Citibank for various causes of action after funds were transferred from the Citibank account to other accounts owned by Alberto and Alberto's wife.[1] Jose alleged he deposited the funds into the accounts in anticipation of kidney surgery to provide his son with the liquidity to handle Jose's business and unexpected emergencies. Jose alleged Alberto had a fiduciary duty to use the funds solely for Jose's benefit.

In his original answer, Alberto asserted a counterclaim against Jose and cross-claims against Matilde Diaz Yanez a/k/a Matilde George (who is Jose's wife and Alberto's mother), Citibank, and Compass Bank. The claims against Compass Bank related to Jose's withdrawal of funds from an account in Alberto's name.

Compass Bank answered and asserted a counterclaim against Alberto alleging Alberto's actions authorized Jose's withdrawal of the funds. Compass Bank also asserted a cross-claim against Jose, asserting if the bank was liable to Alberto, then Jose was liable to the bank for fraudulent negotiation of the funds in the account. In addition to asserting these claims, Compass Bank froze funds in accounts in the names of Jose, Alberto, and Matilde and sought to interplead those funds into the registry of the court. Compass Bank alleged the funds Jose withdrew from the account in Alberto's name were deposited into an account in Jose's name and funds were then transferred from that account to an account in Matilde's name. Compass Bank also froze funds in

---

[1] Jose later non-suited Citibank and Alberto's wife.

an account in the name of Jose's daughter, Elaine, because just as the funds in the account in Alberto's name were deposited by Jose, the funds in Elaine's account also were deposited by Jose.

Compass Bank and Alberto filed competing motions for summary judgment against each other, and Compass Bank filed a motion to approve interpleader. After a hearing, the trial court denied all of the motions.

Compass Bank subsequently filed a second motion for summary judgment against Alberto. The day before the hearing on Compass Bank's motion, Alberto non-suited his claims against Jose, Citibank, and Compass Bank, and Jose non-suited his claims against Alberto. The trial court granted Compass Bank's motion ordering that Alberto take nothing on his claims against Compass Bank and awarding Compass Bank $100,836.55 in attorney's fees. The trial court also severed the claims between Compass Bank and Alberto into a separate cause.

Compass Bank then filed a second motion to allow interpleader or, in the alternative, to declare the manner in which Compass Bank should pay the frozen funds. Compass Bank also filed a motion for summary judgment with regard to the Georges' claims against Compass Bank, asserting the bank complied with the deposit agreements in freezing the funds. After a hearing, the trial court granted both motions and awarded Compass Bank $100,836.55 in attorney's fees plus conditional appellate attorney's fees. The order granting the interpleader authorized Compass Bank to retain $100,836.55 in attorney's fees from the frozen funds before depositing the balance into the court's registry. The trial court then severed the claims between Compass Bank and the Georges into a separate cause.

The Georges filed a motion to modify and a notice of appeal in the original cause number, and Compass Bank filed a response to the motion to modify in the original cause number. The trial court subsequently entered an order in the original cause number allowing the Georges to

withdraw all of the funds deposited into the registry of the court except $75,000, which was retained to pay possible appellate attorney's fees.

JURISDICTION

As previously noted, Compass Bank's motion to dismiss this appeal for lack of jurisdiction was carried with the appeal. In its motion, Compass Bank asserted: (1) the motion to modify filed by the Georges in the original cause number did not extend the deadline for filing their notice of appeal; and (2) the notice of appeal did not invoke this court's jurisdiction over the orders that had been severed into a separate cause. We disagree.

A.    Motion to Modify

In arguing the motion to modify filed by the Georges in the original cause number did not extend the deadline for filing their notice of appeal, Compass Bank primarily relies on *Philbrook v. Berry*, 683 S.W.3d 378 (Tex. 1985). In *Philbrook*, Delvin Stanley Philbrook sued Owens-Illinois, Inc. and other defendants. 683 S.W.2d at 379. After Owens-Illinois failed to answer, "Philbrook moved to sever his claims against Owens-Illinois and obtained a default judgment in the severed cause." *Id.* Owens-Illinois filed a motion for new trial in the original cause rather than the severed cause. *Id.* The trial court "nevertheless considered the motion as if filed in the severed cause and signed an order" granting the motion for new trial fifty-three days after the default judgment was signed. *Id.* Philbrook filed an original mandamus proceeding in the court of appeals arguing the motion for new trial in the original cause did not extend the trial court's plenary jurisdiction in the severed cause. *Id.* The court of appeals denied mandamus relief; however, the Texas Supreme Court granted relief concluding, "Because the motion for new trial was filed in the wrong cause, it did not operate to extend the court's plenary power over its judgment beyond the thirty days prescribed by TEX. R. CIV. P. 329b(d)." *Id.* The court asserted, "In addition to being

- 4 -

filed timely, the motion for new trial must be filed in the same cause as the judgment the motion assails." *Id.*

Although the Texas Supreme Court has not expressly overruled *Philbrook*, it has questioned whether it was properly decided on numerous occasions.[2] *See Blankenship v. Robins*, 878 S.W.2d 138, 138-39 (Tex. 1994) (reversing court of appeals' judgment dismissing appeal based on *Philbrook* and asserting courts of appeals' decisions should turn on substance rather than procedural technicality); *Tex. Instruments, Inc. v. Teletron Energy Mgmt., Inc.*, 877 S.W.2d 276, 278 (Tex. 1994) (noting court previously "questioned whether *Philbrook* was correctly decided"); *McRoberts v. Ryals*, 863 S.W.2d 450, 455 (Tex. 1993) (noting "*Philbrook* is not to be given an expansive reading that invalidates bona fide attempts to appeal"); *City of San Antonio v. Rodriguez*, 828 S.W.3d 417, 418 (Tex. 1992) ("Assuming that *Philbrook* was correctly decided, it is not controlling in this case."); *Mueller v. Saravia*, 826 S.W.2d 608, 609 (Tex. 1992) ("Assuming that *Philbrook* was properly decided, Mueller's appeal still survives dismissal under its standard."). The most relevant of these decisions for purposes of our analysis is *Mueller*.

In *Mueller*, Jolene Mueller filed a medical malpractice action against a doctor and a pharmacy under cause number 90-CI-11255. 826 S.W.2d at 609. On February 11, 1991, the trial court rendered a take-nothing summary judgment in favor of the doctor. *Id.* In that same judgment, Mueller's claims against the doctor were severed and assigned a new cause number, 90-CI-11255A. *Id.* On February 26, 1991, a take-nothing summary judgment was granted in favor of

---

[2] Many intermediate appellate courts, including this court, also have questioned the *Philbrook* decision and refused to follow it. *See, e.g., Manzo v. Lone Star Nat'l Bank*, No. 13-14-00155-CV, 2015 WL 214012, at *1 n.1 (Tex. App.—Corpus Christi Jan. 8, 2015, no pet.) (mem. op.); *Leal v. City of Rosenberg*, 17 S.W.3d 385, 386 (Tex. App.—Amarillo 2000, order); *Hernandez v. Koch Mach. Co.*, 16 S.W.3d 48, 56 (Tex. App.—Houston [1st Dist.] 2000, pet. denied); *Matlock v. McCormick*, 948 S.W.2d 308, 310 (Tex. App.—San Antonio 1997, no pet.); *but see Levin v. Espinosa*, No. 03-14-005340CV, 2015 WL 690368, at *1-3 (Tex. App.—Austin Feb. 3, 2015, no pet.) (following *Philbrook* where trial court clerk notified appellant the motion for new trial was misfiled in the original cause number when appellant could still timely file his notice of appeal) (mem. op.).

the pharmacy in the original cause number. *Id.* On March 7, 1991, Mueller filed a motion for new trial in the original cause number seeking a new trial in both the original cause and the severed cause. *Id.* Mueller subsequently appealed the summary judgment in favor of the doctor. *Id.* The court of appeals dismissed Mueller's appeal relying on *Philbrook* "for the proposition that, when a motion for new trial is filed in a cause not containing the judgment the motion assails, the court's plenary power over its judgment is not extended beyond the 30 days prescribed by TEX. R. CIV. P. 329b." *Id.* The Texas Supreme Court held, "Assuming that *Philbrook* was properly decided, Mueller's appeal still survives dismissal under its standard." *Id.* The court reasoned:

> .… *Philbrook* demands no more than that "the motion for new trial must be filed in the *same cause* as the judgment the motion assails." *Philbrook*, 683 S.W.2d at 379 (emphasis added). That was the case here. First, the judgment assailed was filed under the *original* cause number 90–CI–11255. Consequently, Mueller properly filed her motion for new trial under that same cause number, rather than the severed cause number 90–CI–11255A. Second, no document included within the transcript contains the severed cause number. In fact, all subsequent motions by the parties and rulings by the court were made under the original cause number, 90-CI-11255, rather than the severed cause number, 90-CI-11255A. To follow the court of appeals' own reasoning in a similar case, a party should not be punished "for failure to comply with the terms of an order of severance ignored by [both the opposing party] and the court ... [and] should be able to look to [the] judgment to determine the cause number under which he should file his motion for new trial." *Southland Paint Co., Inc. v. Thousand Oaks Racket Club*, 687 S.W.2d 455, 457 (Tex. App.—San Antonio 1985, no writ).

*Id.* (emphasis in original).

Similarly, unlike the default judgment in *Philbrook* which was "signed in the severed cause,"[3] the orders being appealed in the instant case were signed in the original cause, and the caption of those orders contain the original cause number. In addition, Compass Bank filed its response to the motion to modify in the original cause, and all subsequent filings and rulings with regard to the money deposited into the court's registry pursuant to the trial court's order granting

---

[3] 683 S.W.2d at 379 (noting Philbrook "obtained a default judgment in the severed cause" and trial judge "signed the default judgment in the severed cause").

the interpleader also were made in the original cause number. Therefore, the motion to modify was properly filed in the original cause number and extended the deadline for the filing of the notice of appeal. *See Mueller*, 826 S.W.2d at 609.

B.      Notice of Appeal

Compass Bank also asserts the Georges' notice of appeal did not invoke this court's jurisdiction because it was filed in the original cause number while the orders being appealed were severed into a separate cause number.

An appellate court's decisions should turn on substance rather than procedural technicality. *City of San Antonio*, 828 S.W.2d at 418; *LaGoye v. Victoria Wood Condo. Ass'n*, 112 S.W.3d 777, 782 (Tex. App.—Houston [14th Dist.] 2003, no pet.). The Texas Supreme Court has rejected "constructions of severances … that would have the effect of depriving or deceiving a party out of the right to appeal." *Martinez v. Humble Sand & Gravel, Inc.*, 875 S.W.2d 311, 313 (Tex. 1994). "[A] court of appeals has jurisdiction over any appeal in which the appellant files an instrument in a bona fide attempt to invoke the appellate court's jurisdiction." *Verburgt v. Dorner*, 959 S.W.2d 615, 616 (Tex. 1997). "If there is no suggestion of confusion regarding which judgment the appellant appeals, misnumbering should not defeat the appellate court's jurisdiction." *LaGoye*, 112 S.W.3d at 782; *see also City of San Antonio*, 828 S.W.2d at 418 (holding notation of incorrect cause number on notice of appeal does not defeat jurisdiction of the court of appeals).

In this case, the notice of appeal states the orders being appealed include the partial summary judgment and motion to approve interpleader signed on July 30, 2015. Even though the notice of appeal bears the original cause number, we hold the notice of appeal was a bona fide attempt to invoke our jurisdiction, and we have jurisdiction to consider this appeal. *See Butler v. Whitten*, No. 02-13-00306-CV, 2014 WL 24232, at *2 (Tex. App.—Fort Worth Jan. 2, 2014, order) (concluding court had jurisdiction over appeal even though notice of appeal was filed in the

original cause number rather than severed cause number); *LaGoye*, 112 S.W.3d at 782 (same). Therefore, Compass Bank's motion to dismiss is denied.

## INTERPLEADER

The Georges contend the record contains no evidence to support the interpleader because Compass Bank did not present any evidence that anyone made conflicting demands regarding the ownership or control of their accounts. Because no rival claims to the accounts existed, the Georges assert Compass Bank could not have a reasonable doubt as to who was entitled to payment on the accounts. The Georges also contend Compass Bank never made an unconditional tender of the funds into the registry of the court because it always sought to retain an amount to secure its possible liability to Alberto and its attorney's fees.

An interpleader plaintiff is entitled to relief if three elements are met: (1) it is either subject to, or has reasonable grounds to anticipate, rival claims to the same fund or property; (2) it has not unreasonably delayed filing the action in interpleader; and (3) it has unconditionally tendered the fund into the registry of the court. *Saba Zi Expl., L.P. v. Vaughn*, 448 S.W.3d 123, 128-29 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Young v. Gumfory*, 322 S.W.3d 731, 743 (Tex. App.—Dallas 2010, no pet.). In this case, the Georges challenge whether Compass Bank established the first and third elements.

We review a trial court's ruling that an interpleader action is appropriate under an abuse of discretion standard. *Bryant v. United Shoreline Inc. Assurance Servs., N.A.*, 972 S.W.2d 26, 31 (Tex. 1998); *In re K.C.*, No. 04-03-00012-CV, 2003 WL 22955946, at *2 (Tex. App.—San Antonio Dec. 17, 2003, no pet.) (mem. op.). In this review, "every reasonable doubt should be resolved in favor of the stakeholder's right to interplead." *Bryant*, 972 S.W.2d at 31.

A.      Rival Claims

As noted, Compass Bank was required to establish that it was subject to, or had reasonable grounds to anticipate, rival claims to the accounts held in each of the Georges' names. *Saba Zi Exploration, L.P.*, 448 S.W.3d at 128-29; *Young*, 322 S.W.3d at 743. The Georges contend no evidence of any conflicting claims existed because they each asserted they owned the money in the account listed in their name. This contention, however, ignores the entire impetus for the claim Alberto made against Compass Bank in the underlying lawsuit. Alberto asserted a claim against Compass Bank because Jose claimed ownership of money Jose deposited into an account in Alberto's name. The evidence established that Jose similarly deposited money into accounts in Matilde's and Elaine's names. In fact, after removing the funds from Alberto's account, Jose deposited those funds into an account in his name before writing a check from that account and depositing those funds into an account in Matilde's name. In response to requests for admission, Jose admitted the funds in Alberto's account truly belonged to him and further admitted he placed the funds in his son's name for FDIC insurance reasons. In response to interrogatories, Jose stated he was authorized to remove the funds from Alberto's account "and the bank knew it."

Concerned that Jose might similarly claim ownership of the funds in the accounts in Matilde's and Elaine's name, Compass Bank sent an interrogatory to Elaine requesting information regarding the origin of the funds in Elaine's account. Elaine responded the origin of the funds is irrelevant. In response to requests for admissions, however, Elaine admitted Jose had access to her banking account information. Elaine also admitted Jose wrote a check to her after he withdrew the money from Alberto's account. Elaine further admitted her father deposited the funds into the account at Compass Bank styled in her name.

Compass Bank also sent requests for admission to Matilde in which she admitted Jose had access to her banking account information and wrote a check to her after Jose withdrew the money

from Alberto's account. Matilde further admitted Jose deposited the funds into the account at Compass Bank styled her in her name and that he did so for FDIC insurance reasons. Finally, Alberto asserted claims against Matilde for conspiring with Jose in asserting claims against Alberto.

In addition to the foregoing, the record contains a lengthy series of correspondence between the attorneys for Compass Bank and the Georges regarding the bank's concerns and its desire to interplead the funds into the registry of the court.[4] In one letter, Compass Bank's attorney explained:

> As we have also discussed, Compass Bank does not understand how and why all of these funds keep being transferred between various accounts. At one point, the Father told Compass Bank that he was doing many of these banking transactions to try to put different funds into different people's names to try to spread money around so that it would not be subject to the $250,000 limit imposed by the FDIC. Consequently, even though the money may technically be in an account belonging to the mother or daughter, if the funds truly belong to the father (and/or the son for that matter), such other people may or may not have claims to such funds.

In another letter, Compass Bank's attorney stated the bank was willing to write checks to Elaine and Matilde based on the balances in their accounts if the Georges' attorney would counter-sign a letter representing, on behalf of his clients, that no one else could claim the funds. The Georges' attorney did not sign the letter.

Although the Georges presented the affidavit of their attorney who stated each of the Georges only claimed ownership of the funds in the accounts in their respective names, we resolve every reasonable doubt in favor of Compass Bank's right to interplead. *Bryant*, 972 S.W.2d at 31. Therefore, based on the evidence presented, we hold the trial court did not abuse its discretion in

---

[4] The correspondence spans the period from December of 2013 to June of 2015.

finding Compass Bank had established it was subject to or had reasonable grounds to anticipate rival or conflicting claims to the accounts.

B.     Unconditional Tender

The Georges also contend Compass Bank never made an unconditional tender of the funds because it sought to retain funds for its potential liability to Alberto and for its attorney's fees.  In its second motion to allow interpleader, however, Compass Bank stated, "Compass Bank offers to unconditionally tender the disputed funds to the Court."  Although the trial court allowed Compass Bank to retain its attorney's fees from the funds before depositing the balance into the court's registry, Compass Bank was only required to unconditionally tender the funds.  *See Clayton v. Mony Life Ins. Co. of Am.*, 284 S.W.3d 398, 404 (Tex. App.—Beaumont 2009, no pet.); *Heggy v. Am. Trading Emp. Ret. Account Plan*, 123 S.W.3d 770, 776 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).  As the courts have recognized, only an unconditional tender, not a deposit, is required.  *See Clayton*, 284 S.W.3d at 404; *Heggy*, 123 S.W.3d at 776.

## ATTORNEY'S FEES

In their final issue, the Georges contend the trial court erred in awarding Compass Bank attorney's fees in an identical amount to the attorney's fees Compass Bank was awarded in defending against Alberto's claims.

A party interpleading funds is entitled to have his attorney's fees deducted from the interpleaded funds.  *Gray v. Nash*, 259 S.W.3d 284, 294 (Tex. App.—Fort Worth 2008, pet. denied); *In re K.C.*, 2003 WL 22955946, at *3.  Such an award of attorney's fees is within the trial court's sound discretion.  *Avila v. Lone Star Radiology*, 183 S.W.3d 814, 816 (Tex. App.—Waco 2005, no pet.); *In re K.C.*, 2003 WL 22955946, at *2.

Compass Bank was initially made a party to the underlying litigation on August 23, 2013, when Alberto asserted claims against the bank.  The appellate record contains a letter from the

Georges' attorney stating Compass Bank froze the accounts in August of 2013, apparently after being served with Alberto's pleading. Compass Bank froze all of the accounts because Jose had taken the same actions with regard to each of the accounts, giving rise to Compass Bank's reasonable concern about the potential for rival claims to the funds in those accounts. Compass Bank then began considering its options with regard to the frozen funds, including pursuing an interpleader. Although the Georges argue Compass Bank spent more attorney's fees on the claim involving Alberto, the record reflects the actions taken by Compass Bank's attorney regarding the interpleader were intertwined with the attorney's actions involving Alberto's claim, especially in view of the correspondence in the record between the attorneys discussing both matters simultaneously. Accordingly, we hold the trial court did not err in awarding Compass Bank the same amount of attorney's fees as it was awarded in its summary judgment against Alberto.[5] *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313-14 (Tex. 2006) (holding segregation not required "when discrete legal services advance both a recoverable and unrecoverable claim).

Finally, the Georges contend the affidavit they attached to their response to Compass Bank's motion for summary judgment raises a fact issue precluding summary judgment on the amount of attorney's fees to be awarded. This contention ignores that Compass Bank was permitted to deduct its attorney's fees in the trial court's order granting the interpleader.[6] *Gray*, 259 S.W.3d at 294; *In re K.C.*, 2003 WL 22955946, at *3. As previously noted, the trial court has discretion to deduct an innocent stakeholder's attorney's fees from the interpleaded funds; therefore, we review the trial court's ruling under an abuse of discretion standard. *Gray*, 259

---

[5] Since Compass Bank was paid its attorney's fees from the funds that were interpleaded, it will not be able to also collect the attorney's fees from Alberto.

[6] Although Compass Bank also was awarded its attorney's fees in the order granting Compass Bank's motion for summary judgment, we need not decide whether or not that award was proper. *See* TEX. R. APP. P. 47.1 (noting opinions need only address issues necessary to the disposition of the appeal). We note the Georges do not challenge the trial court's award of conditional appellate attorney's fees in the order granting the motion for summary judgment.

S.W.3d at 294; *Avila*, 183 S.W.3d at 816; *In re K.C.*, 2003 WL 22955946, at *2. It is well-settled that "[a]n abuse of discretion does not exist where the trial court bases its decisions on conflicting evidence." *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978). Because the trial court was presented with conflicting evidence regarding the amount of attorney's fees Compass Bank should be permitted to deduct from the interpleaded funds, the trial court did not abuse its discretion in concluding Compass Bank could deduct attorney's fees in the amount of $100,836.55.

## CONCLUSION

The trial court's orders are affirmed.

Marialyn Barnard, Justice